Neil H. MacEWEN, Plaintiff,

v.

STAR-KIST FOODS, INC. and H. J. Heinz Company, Defendants.

No. 64-C-425.

United States District Court
E. D. New York.

March 3, 1966.

Irving Brand, New York City, for plaintiff.

Cravath, Swaine & Moore, New York City, for defendants; Thomas D. Barr, New York City, Jay E. Gerber, New York City, of counsel.

BARTELS, District Judge.

This action was instituted in April, 1964 for a finder's fee of $1,400,000 against the defendant Star-Kist Foods, Inc. (Star-Kist) and against the defendant H. J. Heinz Company (Heinz) for services rendered in connection with the acquisition by Heinz in April, 1963 of the common stock of Star-Kist for a sum in excess of $2,800,000. Plaintiff also asserts in the pleading a third claim against both of these defendants in *quantum meruit* for the reasonable value of the services rendered.

The original answer was served on July 20, 1964, and on September 1, 1965 the defendants moved for leave to amend their answers and to join as an additional defendant, Jacob Rapoport, a Star-Kist director elected in November, 1962, on the ground that the plaintiff had agreed with Rapoport to share the finder's fee in violation of Rapoport's duty to Star-Kist. The Court denied the defendants' motion to join Rapoport but granted them leave to amend their answers to add three defenses and three counterclaims.

Plaintiff now moves for an order pursuant to Rules 12(b) (6) and 12(f), Fed. Rules Civ.Proc., 28 U.S.C.A., to strike said defenses and counterclaims upon the ground that each of them fails to state a legal defense or counterclaim, respectively, or, in the alternative, for summary judgment pursuant to Rule 56(b), Fed. Rules Civ.Proc., 28 U.S.C.A., dismissing each of said counterclaims.

The defenses and counterclaims may be briefed as follows:

First Defense: Plaintiff is barred because he acted as agent and partner of Rapoport who he knew was a Star-Kist director and a representative of a majority of the stockholders of Star-Kist and, as such fiduciary, could not receive compensation for the alleged transactions.

Second Defense: Plaintiff is barred because he knowingly participated in Rapoport's breach of duty and loyalty to Star-Kist not to reap a personal profit.

Third Defense: Plaintiff is barred because as agent of Star-Kist he violated the fiduciary duty owed by an agent to his principal, by agreeing to share the finder's fee with Rapoport, a Star-Kist director.

First Counterclaim: Because plaintiff knowingly participated in Rapoport's breach of trust to Star-Kist, he is liable to Star-Kist for losses caused by his and Rapoport's joint activities including attorney's fees and expenses in defending the action.

Second Counterclaim: Because plaintiff and Rapoport agreed and conspired to and did violate Rapoport's duties to Star-Kist, plaintiff is liable to Star-Kist for losses caused by his and Rapoport's joint activities including attorney's fees and expenses in defending the action.

Third Counterclaim: Because plaintiff attempted to and is attempting at Rapoport's direction or with his agreement to obtain a finder's fee from defendants for Rapoport and himself in violation of Rapoport's duty to Star-Kist, he is liable to Star-Kist for losses caused by his and Rapoport's joint activities including attorney's fees and expenses in defending the action.

In substance, defendants claim that since plaintiff joined Rapoport in Rapoport's breaches of his fiduciary duties, he may not recover for himself and for Rapoport from either Star-Kist or Heinz any monies which Rapoport could not

directly recover himself and is also jointly liable to both Star-Kist and Heinz with Rapoport for breaches of Rapoport's fiduciary duties.

The question of whether the defenses interposed are valid cannot be determined in this case upon the pleadings and affidavits alone. Since the facts and circumstances are not crystal clear, the Court cannot be certain whether the defenses are sufficient as a matter of law. Motions to strike defenses will be denied if they present either disputed questions of fact or doubtful questions of law. Hill, Brown Corp. v. Bosler, D.Rhode Island 1953, 14 F.R.D. 170; see also, 2 Moore's Federal Practice (Second Edition) ¶ 1221 [3], pp. 2320–2321. Both are present here. The refusal to strike at this time, however, is not a determination that the defenses are valid but only a decision that this motion addressed to the pleadings does not afford the Court in this case sufficient opportunity to resolve the issues of illegality. In reaching this conclusion some explanation is required.

It is elementary that a director of a corporation is a fiduciary and cannot profit from any breach of his fiduciary obligation. But a statement of the rule does not solve the problem of whether the fiduciary in this case actually breached his obligation. As was stated in Securities and Exchange Commission v. Chenery Corp., 1943, 318 U.S. 80, 85–86, 63 S.Ct. 454, 458, 87 L.Ed. 626: "But to say that a man is a fiduciary only begins analysis; it gives direction to further inquiry. To whom is he a fiduciary? What obligation does he owe as a fiduciary? In what respect has he failed to discharge these obligations? And what are the consequences of his deviation from duty?" Consequently, it is not accurate to say that a director cannot under any circumstances deal with his corporation. The fact is that a director may deal with his corporation if at the same time the corporation acts through other directors or officers in the transaction, in which event, in order to vitiate the transaction or contract, proof of unfairness causing injury, or proof of bad faith of that director or of other directors or officers is necessary. See, 3 Fletcher Cyc. Corp. (Perm.Ed.) Ch. 11, § 926, pp. 392–393. In such a case the action or vote of the director with a personal interest is not necessary to effect or influence the action of the corporation. The risk involved is that the director's personal interest may override his official obligation so that the transaction does not bear "the earmarks of an arm's length bargain." Pepper v. Litton, 1939, 308 U.S. 295, 306–307, 60 S.Ct. 238, 245, 84 L.Ed. 281; Epstein v. United States, 6 Cir. 1949, 174 F.2d 754, 764. Therefore, the courts will scrutinize with jealous care all personal transactions between a director and his corporation and if these transactions are challenged, the burden is upon those who seek to justify them. Geddes v. Anaconda Copper Mining Co., 1921, 254 U.S. 590, 599, 41 S.Ct. 209, 212, 65 L.Ed. 425. Not only is a disloyal director barred from recovery of profits made from his illegal transactions, but anyone who joins or assists him in the violation of his duty is also barred from any recovery of profits he may happen to make from the enterprise.

In Irving Trust Co. v. Deutsch, 2 Cir. 1934, 73 F.2d 121, cert. denied, Biddle v. Irving Trust Co., 1935, 294 U.S. 708, 55 S.Ct. 405, 79 L.Ed. 1243, an agent of a corporation who participated with the president in taking advantage of a corporate opportunity with full knowledge that the president's personal interest was antagonistic to the corporate interest, was held liable with the president for all profits made therefrom, the Court remarking that the same result would have been reached if the plaintiff were not an agent of the corporation: "But, even if the fact of his agency be disregarded, we think there is an applicable principle which requires him to account, namely, that one who knowingly joins a fiduciary in an enterprise where the personal interest of the latter is or may be antagonistic to his trust becomes jointly and severally liable with him for the

profits of the enterprise." (73 F.2d p. 125).

In an effort to discourage dereliction by corporate fiduciaries it has been held that a fiduciary of a corporation is also barred from recovery from a third party of any profits he might have made in violation of his duty. Thus, in Colonell v. Goodman, E.D.Pa.1948, 78 F.Supp. 845, aff'd, 3 Cir. 1948, 169 F.2d 275, cert. denied, 335 U.S. 870, 69 S.Ct. 166, 93 L.Ed. 414, plaintiff as sales manager of American Oil Company, unbeknown to his employer, made an agreement with the president of Parkway Oil Company, one of the employer's customers, to assist Parkway in selling its assets to the Texas Company, a competitor of the employer. Plaintiff was to receive a commission for his services but after the sale Parkway refused to pay plaintiff his commission and the Court upheld this refusal, stating: "It can hardly be asserted, nor could a jury find, that a promise by a third party to compensate a sales manager of a corporation for his services in taking a large customer away from his employer is not one that tends to induce a violation of his duty." (78 F. Supp. p. 847). See also, Restatement, Contracts, Sec. 570.

In the instant case it appears that in the Fall of 1962 Rapoport suggested to plaintiff that Star-Kist could possibly be sold to one of plaintiff's contacts; that on November 14, 1962 plaintiff contacted Heinz, and that on the next day (November 15, 1962) a written agreement was sent to plaintiff by Rapoport confirming plaintiff's agreement to share any finder's fee. Plaintiff claims that this letter simply confirmed a prior oral agreement to the same effect. At that time Rapoport was not a director of Star-Kist and did not become such a director until November 28, 1962. In the affidavit of Thomas D. Barr, counsel for the defendants, it is stated that from October, 1962 and throughout the period involved, Rapoport represented and held an irrevocable proxy of the majority shareholders of Star-Kist to vote their stock (presumably for election of directors), and that on January 29th and 30th, 1963, Rapoport disclosed his sharing agreement to Heinz and Star-Kist. According to the affidavit of Irving Brand, plaintiff's counsel, Star-Kist on January 31, 1963, with full knowledge of the sharing agreement, promised its cooperation to Rapoport to obtain a satisfactory final agreement with Heinz; that on February 21, 1963 the contract of sale was executed, and that both the directors and the stockholders of Star-Kist unanimously approved such sale after full disclosure of the sharing agreement. Plaintiff emphasizes the fact that full disclosure of the sharing agreement was made to Star-Kist, which, however, may not be determinative of the question of whether the beneficiaries effectively consented to such sharing by Rapoport. Disclosure alone may not be sufficient unless the subsequent conduct of the beneficiaries constituted either an express or implied consent to the agreement.

Thus it is evident that the issues are foggy and that certain factual questions remain to be determined before the Court can intelligently pass upon this motion to strike, such as the following:

(1) Did Rapoport have any fiduciary duty to find a purchaser for Star-Kist and if not, did he have an obligation to obtain the consent of his beneficiaries after he entered into the sharing agreement with plaintiff, upon the theory that this agreement might be antagonistic to his duty to the corporation? Did the conduct of Star-Kist and its stockholders after disclosure by Rapoport, constitute such consent?

(2) Was plaintiff legally bound to share the finder's fee with Rapoport before the latter owed any fiduciary duty to either Star-Kist or its stockholders? If so, how can he be denied recovery against either Star-Kist or Heinz upon the ground that he aided and abetted Rapoport in violation of his fiduciary duty? The fact that he subsequently learned of Rapoport's election as a director and of his power of attorney to vote the stock of the majority stockholders, would not release him from his obliga-

tion to share with Rapoport. It was, however, his duty as an agent for Star-Kist to inform Star-Kist of the sharing agreement and thereafter Star-Kist would have been in a position to decide what, if anything, it could or wished to do about it. Star-Kist was notified of the arrangement by Rapoport and the question remains whether Star-Kist should, under the circumstances, be permitted to remain silent and after securing the advantage of plaintiff's efforts, belatedly assert the defense of aiding and abetting Rapoport in violation of some fiduciary obligation.

(3) Rapoport was in a different position than plaintiff. When he became a director of Star-Kist he had an obligation of full disclosure and of repudiating the sharing agreement if it was antagonistic to his obligation as a director if his beneficiaries did not consent thereto, either expressly or impliedly; otherwise it could be claimed that his efforts to effectuate the sale to Heinz were motivated not by his obligation as a director to obtain the best possible sale but by his personal interest to participate in a finder's fee arising out of the Heinz transaction. Consequently, depending upon the development of the facts in accordance with this analysis, Rapoport might not be entitled to any recovery against Star-Kist, either directly or indirectly, and any recovery plaintiff might obtain against Star-Kist might have to be reduced by the amount of Rapoport's share. Against Heinz a different principle may be applicable, depending upon whether Rapoport's duties as a director of Star-Kist prevented him from accepting a finder's fee from a third-party purchaser. While he apparently had no duty to Star-Kist to find a purchaser for it, he did have an obligation to consider its welfare first in recommending a sale, rather than his interest in a finder's fee if the sale was made to Heinz. Consequently, if he wished to profit from the transaction, assuming it involved a conflict of interests, he had an obligation to obtain the approval of his beneficiaries, either Star-Kist or its stockholders, before accepting

a finder's fee from Heinz. See, Colonell v. Goodman, supra. If no conflict of interests was involved as far as Star-Kist was concerned, then Heinz would have no defense.

(4) Plaintiff's claim against Heinz, of course, is much stronger. He had no obligation of disclosure to Heinz, although he did have an obligation, as indicated above, to disclose the sharing agreement to Star-Kist. If Star-Kist had such knowledge, then plaintiff was free to make his claim against Heinz because in so doing he was not violating any duty to Star-Kist. The defendants seek to bring plaintiff within the purview of the principles set forth in Irving Trust Co. v. Deutsch, supra, and Colonell v. Goodman, supra. These principles would have to be extended in order to prevent plaintiff's recovery in this case. Plaintiff's claim is not a claim against a corporation by a person who aided a director of that corporation in violating the latter's fiduciary obligation (Irving Trust Co. v. Deutsch, supra), nor is it a claim against a third party by a person who himself has violated a fiduciary obligation to his corporation. Colonell v. Goodman, supra. A best, it falls within the category of a claim against a *third party* by a person who is alleged to have *aided* a director in violating his obligation to another corporation—not the *third party*. This Court has found no authority which would bar plaintiff under the circumstances, unless the principles of the above two cases are extended and this Court is unprepared to make such an extension upon the record before it. To do so would permit a third party to escape liability to a person who allegedly aided a fiduciary of another corporation, when a remedy can be so fashioned as to limit the recovery against the third party to the non-fiduciary plaintiff and to that extent eliminate a windfall to the third party. However, the striking of such defenses as far as the non-fiduciary plaintiff is concerned, should be postponed until all of the facts are presented at the trial.

For the above reasons, the motion to strike the defenses will be denied without prejudice to renew the same during the trial if the evidence there adduced clearly illustrates that in accordance with the above principles the defenses are inapplicable.

■ The counterclaims are not in the same category. No loss has been or will be sustained either by Star-Kist or Heinz unless plaintiff recovers, and in that event the counterclaims would invalidate and automatically defeat the recovery which obviously would be anomalous. If the defendants are successful, they will have suffered no losses except for attorney's fees and expenses of the suit, which in this country at least are not recoverable; consequently, in that event, there would be no foundation for the counterclaims. Accordingly, the counterclaims by both Star-Kist and Heinz are hereby dismissed.

■ In view of the incomplete and different versions of the facts and circumstances surrounding the transaction, the alternate motion for summary judgment must also be denied.

Settle order in accordance with the above within ten (10) days on two (2) days' notice.