UNITED STATES of America, for the Use and Benefit of the TRANE COMPANY, Plaintiff,

v.

RAYMAR CONTRACTING CORP., Benjamin Gelman, doing business as Gelco Builders, Burjay Construction Corp., National Surety Corporation and the Hanover Insurance Company, Defendants.

No. 62 Civ. 2245.

United States District Court
S. D. New York.

Feb. 5, 1968.

Schwartz, Weisberger, Leichter & Storch, New York City, for plaintiff; Irving Ronald Storch, New York City, of counsel.

Hart & Hume, New York City, for National Surety Corp. and The Hanover Ins. Co.,; Jack Hart, Lewis Stockman, New York City, of counsel.

Benjamin D. Share, New York City, for Benjamin Gelman, d/b/a Gelco Builders, and Burjay Construction Corp.

## MEMORANDUM

MacMAHON, District Judge.

This is an action under the Miller Act brought by a supplier of materials to a defaulting subcontractor on a post office project against the prime contractor and sureties. The question for determination is whether the action is time-barred under the one-year limitation provision of the Miller Act, 40 U.S.C. § 270b.

The court finds that the following facts were established upon the trial:

The use plaintiff, Trane, has its principal place of business in La Crosse, Wisconsin. At the times involved, it also had an office in New York which was staffed by a manager and eight salesmen, one of whom, Kliesrath, worked both out of the New York office and an office located at Syosset, Long Island. Kliesrath negotiated with Raymar, a subcontractor, on a project where the prime contractor[1] had agreed to install a central air conditioning system at two New York post offices.

On April 19, 1960, Raymar gave a purchase order for Trane to supply air handling equipment, coils, and fans to Raymar. Trane did not manufacture electric motors, and there was no mention of them in the purchase order. Kliesrath dealt with Raymar on deliveries under the purchase order, and Trane had supplied all of the materials specified and delivered them to the construction site by November 1, 1960. Thereafter, Trane billed Raymar for the agreed price of $39,703.05 which Raymar failed to pay. The prime contractor also failed to pay after due notice in January 1961 of Raymar's failure to pay.

After Raymar's default, in April 1961, the prime contractor took over completion of Raymar's job. Gelman, as agent for the prime contractor, telephoned Trane's New York office to inquire about the purchase of electric motors to be used with the air conditioning equipment which had already been installed. He was referred to Kliesrath and met with him.

On April 28, 1961, Gelman gave Kliesrath an order for standard electric motors. Without authority from or notice to Trane, Kliesrath ordered the motors not from Trane but from General Dynamics Corporation. That company delivered the motors to the construction site, making the last delivery on July 10, 1961. All of the motors were consigned to Raymar.

On July 18, 1961, Kliesrath sent invoices to the prime contractor totalling $3,235.00 for the motors. The invoices were on the following billhead: "The Trane Company, Long Island Trane Service Co., 88 Cold Spring Road, Syosset, L. I., N. Y.," and specifically directed that all checks be made payable to the "Long Island Trane Service Co." The prime contractor immediately made payment of the invoices by its checks payable to the "Long Island Trane Service Co." Kliesrath endorsed the checks and converted the proceeds to his own use. Kliesrath was not authorized by Trane to set up the Long Island Trane Service Co., nor to enter into the motor transaction.

This action for recovery of both the purchase price on the air handling equipment, coils, and fans ($39,703.05) and the motors ($3,235.00) was commenced against the prime contractor and the surety on June 28, 1962 and June 29, 1962, respectively. Defendants contend that the action is time-barred.

The Miller Act, 40 U.S.C. § 270b, provides that "no such suit [by a use plaintiff] shall be commenced after the expiration of one year after the day on which the last of * * * the material was supplied by [the use plaintiff]." Whether the action is timely brought turns on whether "the day on which the last of * * * the material was supplied by [the use plaintiff]" was July 10, 1961, the last delivery of a motor, or November 1, 1960, the last delivery of a coil or fan. Defendants contend that the motor transaction was an entirely separate transaction and therefore that the delivery of the last motor on July 10, 1961 was not a delivery under the contract between Trane and Raymar. Plaintiff contends that it ratified Kliesrath's unauthorized contract to supply motors and that the last delivery of a motor on July 10, 1961 was therefore

---

1. Defendant Benjamin Gelman, doing business as Gelco Builders, and Burjay Construction Corp., a joint venture, are collectively referred to in this memorandum as "the prime contractor."

the last date of delivery of material under the contract between Trane and Raymar.

If the two agreements, one in April 1960, the other in April 1961, are part of one contract, then it is clear that this action was timely commenced. If the two agreements are in fact two separate contracts, then the claim as to $39,703.-05 is time-barred, since an action must be commenced within one year of the "day on which the last of the material was supplied" on each separate contract.

In United States for Use and Benefit of J. A. Edwards & Co. v. Peter Reiss Const. Co., 273 F.2d 880, 78 A.L.R.2d 409 (2 Cir. 1959), cert. denied, 362 U.S. 951, 80 S.Ct. 864, 4 L.Ed.2d 869 (1960), the court held that notices of nonpayment by a subcontractor had to be given by a materialman within 90 days of the last delivery of materials on each separate contract. 40 U.S.C. § 270b(a). Other courts have held that the day which fixes the time when the 90-day period for giving notice starts to run also fixes the time when the one-year period for filing suit starts to run. United States for Use and Benefit of Austin v. Western Electric Co., 337 F.2d 568, 572 (9 Cir. 1964); United States for Use and Benefit of Taykinswell, Inc. v. Bencon Const. Co., 248 F.Supp. 502, 506 (D.Md.1965), aff'd on opinion below, 369 F.2d 405 (4 Cir. 1966).

■ We now consider whether the two agreements were in fact separate contracts, or one interrelated contract. It is well settled that the factors to be considered in answering this question are: the time and place of acceptance, the time and place of performance, and the character of the performance. Corbin, Contracts § 696 (rev. ed. 1961). Applying these criteria to the facts of this case, we find two separate contracts for the agreement to supply air handling equipment, coils and fans is separate and distinct from the agreement to purchase motors.

The first agreement, between Trane and Raymar, was made in April 1960; the second, between Trane and the prime contractor, was made one year later. Performance of the first agreement was fully completed by November 1, 1960.[2] Performance of the second agreement was not completed until seven months later, in July 1961.

■ The first agreement called for Trane to manufacture the goods to specification. The second agreement called for stock items, electric motors, which Trane had to order from outside manufacturers because it did not manufacture them itself.

Finally, the parties to the agreements are different.

Trane introduced no evidence showing that the two agreements are interrelated in any way, or that the second was contemplated by either party at the time of the first.

General Electric Co. v. Southern Const. Co., 383 F.2d 135 (5 Cir. 1967), which Trane cites, is inapposite. There the successive agreements between the materialman and the subcontractor and the prime contractor were parts of one contract, not separate contracts.

Accordingly, we hold that this action, commenced in July 1962, for $39,703.05, the price of materials supplied under a separate contract of April 1960 upon which the last date of delivery was November 1, 1960, is time-barred and must be dismissed.

■ Trane also claims $3,235.00 for the motors which the prime contractor ordered in April 1961 from Long Island Trane Service Co. As we have seen, that contract was made by Kliesrath without authority. Trane now purports to ratify it. Admittedly, the prime contractor paid $3,235.00 to Long Island Trane Service Co., a fictional entity which Kliesrath set up to deal with the prime contractor.

---

2. Trane so stated in its 90 day letter to the prime contractor informing it of Raymar's failure to pay.

The contract between Kliesrath and the prime contractor provided that the motors were to be paid for upon receipt, and that payment was to be made to Long Island Trane Service Co. Those two conditions were part of the contract. It is well settled that "a contract * * must be affirmed in its entirety in order to effect its ratification." Restatement of Agency 2d § 96. Trane cannot pick and choose what it will accept of the contract it purports to ratify. It must take the burdens with the benefits. It cannot, therefore, affirm its disloyal agent's sale and disavow his receipt of the purchase price. If it ratifies, it must ratify the whole contract, and, in that case, the prime contractor has paid for the motors and is not indebted to Trane.

The foregoing constitutes the court's findings of fact and conclusions of law, as required by Fed.R.Civ.P. 52(a).

The Clerk of the court will be ordered to enter judgment dismissing plaintiff's complaint with costs and disbursements of the action to defendants National Surety Corporation and The Hanover Insurance Company. Submit judgment on notice within ten (10) days of the filing of this memorandum.