Dominic QUINN, Plaintiff,

v.

**STRAUS BROADCASTING GROUP, INC., Defendant.**

No. 69 Civ. 4781.

United States District Court, S. D. New York.

March 5, 1970.

Boal, Doti, Fitzpatrick & Hart, New York City, for plaintiff; William D. Greene, New York City, of counsel.

Robinson, Silverman, Pearce, Aronsohn & Sand, New York City, for defendant; Leonard B. Sand, Barry I. Fredericks, New York City, of counsel.

## MEMORANDUM

BONSAL, District Judge.

Defendant Straus Broadcasting Group, Inc. moves (1) pursuant to F.R.Civ.P. 12(f) to strike the *ad damnum* clause in the first cause of action alleged in plaintiff's complaint, and (2) pursuant to F.R.Civ.P. 12(b) (6) to dismiss the second and third causes of action on the

ground that they fail to state claims upon which relief can be granted.

This is a diversity action for breach of an employment contract. The complaint alleges in the first cause of action that plaintiff Dominic Quinn entered into a written agreement on April 29, 1969 (attached as exhibit "A" to the complaint) with defendant to perform as moderator of a radio "talk show" called "WMCA Power Line with Dominic Quinn," which was to be broadcast on defendant's New York City radio station, WMCA, from 6:00 a. m. to 10:00 a. m. Monday through Friday, that plaintiff began performing pursuant to the agreement, and that on August 1, 1969, defendant discharged plaintiff without just cause by notifying him that it would not broadcast his show after August 29th, and would have no future need for his services after that date. (Defendant states that it offered to pay plaintiff the balance of the $50,000 provided in the contract.) Plaintiff claims $500,000 in damages in the first cause of action.

The second cause of action incorporates the allegations of the first cause of action, alleges the unique nature of Quinn's services and his need to appear before the public to advance his professional reputation, that defendant knew that plaintiff's reputation would be damaged by cancellation of his show, and that defendant's cancellation deprived him of the opportunity to appear before the public. Plaintiff claims an additional $500,000 in damages in the second cause of action.

The third cause of action incorporates the allegations of the first and second causes of action and alleges in paragraph 13 that defendant's cancellation "held the plaintiff up to public ridicule and caused his reputation as a performer to be seriously and permanently impaired." Plaintiff claims an additional $500,000 in damages in the third cause of action, making a total of $1,500,000 claimed in damages.

The contract provided that plaintiff was employed as a "staff announcer" for the year April 1, 1969 to March 31, 1970 at a salary of $50,000, and that WMCA had an option to renew for a second year at $57,500, and for a third year at $65,000.

The parties agree that the substantive law of the State of New York applies.

With respect to the first cause of action alleging breach of plaintiff's employment contract, defendant moves to strike the *ad damnum* clause of $500,-000 on the ground that plaintiff's damages cannot exceed the stipulated salary of $50,000. The New York rule is that damages for breach of an employment contract are limited to the unpaid salary to which the employee would be entitled under the contract less the amount by which he should have mitigated his damages, Cornell v. T. V. Development Corp., 17 N.Y.2d 69, 268 N.Y.S.2d 29, 215 N.E.2d 349 (1966). This rule was recently applied with respect to the conductor of the orchestra of the Metropolitan Opera in Amaducci v. Metropolitan Opera Association, 33 A.D.2d 542, 304 N.Y.S.2d 322 (1st Dept. 1969), where plaintiff sought damages for mental anguish and defamation resulting from his discharge, the court stating:

"It is well settled that the optimum measure of damages for wrongful discharge under a contract of employment is the salary fixed by the contract for the unexpired period of employment, and that damages to the good name, character and reputation of the plaintiff are not recoverable in an action for wrongful discharge." 33 A.D.2d 542, 304 N.Y.S.2d at 323.

While *Amaducci* does not directly answer plaintiff's contention that he is entitled to damages for the loss of opportunity to practice his profession before the public, there is no reason to believe that the State courts would adopt a different rule in this context. Moreover, it is clear that by signing a $30,000 contract with radio station WCAU in Philadelphia in September 1969, plaintiff has not lost his opportunity to practice his profession.

Plaintiff relies on a 1930 House of Lords case (Clayton & Waller, Limited v. Oliver [1930] AC 209) and a 1965 California Court of Appeals case (Colvig v. RKO General, Inc., 232 Cal.App. 2d 56, 42 Cal.Rptr. 473 (Dist.Ct.App., 1st Dist. 1965)) for the proposition that the New York courts would make an exception to the New York rule in this case. *Colvig* is clearly distinguishable as it involved the enforcement of an arbitration award. *Clayton* was decided 40 years ago, and no New York cases have been cited to indicate that New York would follow *Clayton*. Taken together, these two cases cannot be said to be a precursor of an exception to the New York rule, and therefore this court is bound to follow the rule as stated in *Cornell* and *Amaducci*, see Calvert v. Katy Taxi, Inc., 413 F.2d 841 (2d Cir. 1969); Bartolotta v. Liberty Mutual Insurance Co., 411 F.2d 115 (2d Cir. 1969); Mayer v. Chase National Bank of the City of New York, 233 F.2d 468 (2d Cir.), cert. denied, 352 U.S. 841, 77 S. Ct. 64, 1 L.Ed.2d 58 (1956).

■ Since, under the New York rule, plaintiff's damages are limited to a maximum of $50,000, his *ad damnum* clause of $500,000 in the first cause of action is clearly excessive and will be stricken.

■ The second and third causes of action are not recognized in the New York rule as laid down in *Cornell* and *Amaducci*. The second alleges that plaintiff's services were unique and that by reason of the breach of contract plaintiff was deprived of an opportunity to perform before large audiences; and the third alleges that his reputation as a performer had been impaired. No authority has been suggested for the proposition that loss of opportunity to perform entitles the employee to a separate cause of action. *Amaducci* holds that no separate cause of action can be stated for loss of reputation. Divested of these allegations, the second and third causes of action merely repeat the first cause of action. Accordingly, they will be stricken.

Plaintiff may file an amended complaint within 20 days from the date of the order to be entered herein.

Settle order on notice.