**John SAMPLE, Jr., Plaintiff,**

v.

**GOTHAM FOOTBALL CLUB, INC.,**
**Defendant.**

**No. 70 Civ. 2690.**

United States District Court,
S. D. New York.
March 26, 1973.

Hoffberg, Margolies & Ginsberg (Morton L. Ginsberg, New York City, of counsel), for plaintiff.

Hardee, Barovick & Konecky, New York City (Richard L. Barovick, New York City, of counsel), for defendant.

EDELSTEIN, Chief Judge.

## OPINION

Defendant has moved, pursuant to Fed.R.Civ.P. 56(b) for summary judg-

ment on the three causes of action alleged in plaintiff's complaint. These causes of action charge respectively: (1) a breach of plaintiff's 1969 personal services contract; (2) a breach of plaintiff's 1970 personal services contract; and (3) injury to plaintiff's good name, reputation, and career as a result of his allegedly wrongful dismissal. Plaintiff has cross-moved pursuant to Fed.R.Civ. P. 56(a) for summary judgment upon his first and second claims, and, in the alternative, pursuant to Fed.R.Civ.P. 12(f) to strike defendant's third affirmative defense. Jurisdiction lies under 28 U.S.C. § 1332 (1970) because plaintiff and defendant are citizens of different states and the amount in controversy exceeds $10,000, exclusive of interest and costs.

As to the first cause of action both motions must be denied because there exist genuine issues of material fact. Fed.R.Civ.P. 56(c). Defendant is the owner and operator of a professional football team popularly known as the "New York Jets." On September 1,

1968, it entered into three separately executed written agreements with plaintiff under which plaintiff was required to render services as a professional football player for the 1968, 1969 and 1970 football seasons. Each document represents the agreement between plaintiff and defendant for a different year. The current dispute only pertains to the contracts covering the 1969 and 1970 football seasons.

The first cause of action is predicated on the alleged wrongful termination of plaintiff's contract for the 1969 season. The termination of plaintiff's contract arose from a series of events related to an injury he allegedly sustained while performing in a pre-season exhibition football game on August 1, 1969, and a subsequent dispute concerning his physical ability to resume normal player activities for defendant.

With regard to the first cause of action, defendant argues that any claim is barred because plaintiff failed to comply with the grievance procedures set forth in paragraph 14 of their contract,[1] i. e.,

1. Paragraph 14 reads as follows:
    14. In the event that Player is injured in the performance of his services under this contract, and if Player gives written notice to the Club Physician of such injury within thirty-six (36) hours of its occurrence, the Club will: (1) provide, during the term of this contract, such medical or hospital care as, in the opinion of the Club Physician, may be necessary; and (2) continue, during the term of this contract, to pay Player his salary as provided in ¶ 3 or ¶ 10 hereof, whichever is applicable if and so long as it is the opinion of the Club Physician that Player, because of such injury, is unable to perform the services required of him by this contract. Player may, within seventy-two (72) hours after his examination by the Club Physician, submit at his own expense to an examination by a physician of his choice. If the opinion of such physician with respect to Player's physical ability to render the services required of him by this contract is contrary to that of the Club Physician, the dispute shall be submitted to a disinterested physician to be selected by the Club Physician and Player's physician, or, if

they are unable to agree, by the Commissioner, and the opinion of such disinterested physician shall be conclusive and binding upon the Player and the Club. Except as provided in this paragraph, Player's failure for any reason whatsoever to perform this contract or the services required of him by this contract, or his failure to comply with: the Joint Constitution; or the Constitution and By-Laws, Rules and Regulations of the League, or of the Club, or of any league of which the Club may hereafter become a member, shall entitle the club, at its option, to terminate such contract, such termination to be effective when the Club sends to the Player written notice of such termination, or shall entitle the Club at its option to terminate Player's salary under this contract. The Player's death shall automatically terminate this contract. The rights of termination set forth in this paragraph shall be in addition to the rights of termination set forth in ¶ 6 hereof, and any other rights of termination allowed by law.
    If Player is injured in the performance of his services under this contract, this contract shall remain in full force and

plaintiff has not met the three pre-requisites of paragraph 14,[2] which limit defendant's unqualified right to terminate plaintiff's contract, salary, or both.[3] Whether plaintiff has met these requirements appears to raise genuine issues of material fact. Additionally, it seems clear that factual questions likewise exist with respect to defendant's compliance with both paragraph 14 and other contractual provisions.

Plaintiff argues that his dismissal was arbitrary since it came only after the defendant unsuccessfully sought to obtain "waivers"[4] and trade him to another professional football team. The defendant denies this allegation, and justifies the dismissal on plaintiff's alleged failure to comply with paragraph 14. The points and counterpoints made by both parties need not be detailed. It is sufficient that these matters arguably raise genuine issues of fact.

This is not intended as a complete enumeration of all factual issues that might require litigation regarding plaintiff's first cause of action. It is intended, however, to illustrate the existence of factual issues which require the denial of both motions for summary judgment addressed to plaintiff's first claim.

Turning to an examination of the second cause of action the court is confronted with the allegation that plain-

---

effect despite the fact that Player, following injury, is either carried by the Club on its Reserve List or is waived out as an injured player while injured, when such Player is, in the opinion of the Club Physician, again physically able to perform his services under this contract, the Club shall have the right to activate such Player, and Player shall be obligated to perform his services hereunder in accordance with the terms hereof.

2. Briefly stated the three pre-requisites are as follows: (1) there must be an injury sustained during the performance of services pursuant to the contract; (2) written notice of such injury must be given to the team physician within thirty-six (36) hours of its occurrence; and (3) once the team physician certifies a player as physically fit to resume normal player activities the player must submit within the next seventy-two (72) hours to a physical examination by a physician of his choice in order to dispute such finding.

3. Paragraph 1 of the contract provides *inter alia* that its terms are made subject to ". . . termination, extension or renewal as specified herein."
   Paragraph 6 of the contract establishes the grounds upon which the defendant may terminate its obligation to the plaintiff. It states:
   6. The Player represents and warrants that he is and will continue to be sufficiently highly skilled in all types of football team play, to play professional football of the caliber required by the League or by any league of which the Club may hereafter become a member, and by the Club, and that he is and will continue to

be in excellent physical condition, and agrees to perform his services hereunder to the complete satisfaction of the Club and its Head Coach. Player shall undergo a complete physical examination by the Club physician at the start of each training session during the term hereof. If Player fails to establish his excellent physical condition to the satisfaction of the Club physician by the physical examination, or (after having so established his excellent physical condition) if, in the opinion of the Head Coach, Player does not maintain himself in such excellent physical condition or fails at any time during the football seasons included in the terms of this contract to demonstrate sufficient skill and capacity to play professional football of the caliber required by the League, or any league of which the Club may hereafter become a member, or by the Club, or if in the opinion of the Head Coach the Player's work or conduct in the performance of this contract is unsatisfactory as compared with the work and conduct of other members of the Club's squad of players, the Club shall have the right to terminate this contract.

4. "Waivers" is the process whereby a team informs the league office that it is terminating a player's contract. Before a player is let go, however, each team gets an opportunity to claim the player. The team with the worst record during the previous season gets first crack at claiming the player. If no team selects the player after all teams in inverse order of their league standing have had an opportunity to claim the player, the player is deemed waived.

tiff's dismissal in 1969 entitles him to recovery of his 1970 salary under the injury-benefits clause of his contract. This allegation is grounded on plaintiff's contention that both parties intended to enter into one three-year contract covering the 1968, 1969 and 1970 football seasons, notwithstanding the existence of three separately executed documents. Accordingly, plaintiff argues that since his alleged injury was sustained during the performance of a three-year contract he is entitled to his salary for the remaining term of the contract.[5] *But cf.* Hennigan v. Chargers Football Co., 431 F.2d 308 (5th Cir. 1970).

To the contrary, defendant contends that the three separately executed documents were intended to represent three one-year contracts. Thus, if obligated to pay at all, it would be liable only for the salary provided under the contract pertaining to the season in which the injury was sustained. After a careful and thorough independent review of the record the court finds that the parties entered into three one-year contracts, rather than a single three-year contract. Accordingly, defendant is granted summary judgment with respect to plaintiff's second cause of action.

Plaintiff argues that he subjectively believed that he was entering into one

three-year contract when he affixed his signature to the documents in question. He further alleges that he was duped into the separate-contract-arrangement due to: (1) his lack of sophistication in contract negotiations; (2) his lack of representation by counsel; and (3) the unequal bargaining positions of the parties. All these arguments are unavailing.

■■ In determining whether the simultaneous execution of several instruments results in one contract or in several separate agreements, the intention of the parties must be ascertained from a reading of the several instruments, and from an examination of the facts and circumstances at the time of execution.[6] The New York Court of Appeals has stated that when the terms of a written contract are clear and unambiguous the intent of the parties must be ascertained from the language used to express such intent. Morlee Sales Corp. v. Manufacturers Trust Co., 9 N. Y.2d 16, 19, 210 N.Y.S.2d 516, 518, 172 N.E.2d 280, 282 (1961); Nichols v. Nichols, 306 N.Y. 490, 496, 119 N.E.2d 351, 353 (1954). Here the contracts were plain and unambiguous. The intent of the parties is clearly manifested by the three separate executions, and because each contract pertains to a single football season.[7] Moreover, the relevant

---

5. Plaintiff's argument is predicated on the injury-benefits provision of the Standard Players Contract. *See* note 1, *supra*, and accompanying text.

6. *Cf.* Nau v. Vulcan Rail & Constr. Co., 286 N.Y. 188, 197–198, 36 N.E.2d 106, 111 (1941); 3A A. Corbin, Contracts § 696 (1951).

7. It should be noted that the contracts in question all contain a clause which states that the written instrument is a total integration of all agreements between the parties. Paragraph 16 of the contracts in issue states:

This contract sets forth the entire agreement between the parties. The signing of this agreement by the parties constitutes their mutual recognition that

no other contracts or agreements, oral or written, except as attached hereto or specifically incorporated herein, exists between them, that, if any such oral or written contracts or agreements exist, such are hereby cancelled; each party hereby represents to the other that it will not rely upon any agreement or understanding not reduced to writing and incorporated in this agreement prior to the execution hereof.

For a discussion and analysis of the effect of an integration clause on the parol evidence rule see 4 S. Williston, Law of Contracts § 633 (3d ed, Jaeger 1961). On the effects of the parol evidence rule on Summary Judgment see 6 J. Moore, Federal Practice ¶ 56.17 [43] (2d ed. 1965).

contractual intent is that expressed in the contract (or contracts) even though it may not accord with the subjective intent of the parties. Peripheral Equip., Inc. v. Farrington Manufacturing Co., 29 A.D.2d 11, 13, 285 N.Y.S.2d 99, 101 (1967); Donato v. Baltrusaitis, 56 Misc.2d 935, 939, 290 N.Y.S.2d 659, 664 (Sup.Ct., Queens County 1968). It should be noted that although all three contracts were executed contemporaneously by the same parties, this does not necessarily require that they be read together as one instrument. Plaintiff's reliance on Ripley v. International Railways of Central America, 8 N.Y.2d 430, 209 N.Y.S.2d 289, 171 N.E.2d 443 (1960), and Nau v. Vulcan Rail & Construction Co., 286 N.Y. 188, 36 N.E.2d 106 (1941) for the contrary proposition, is misplaced. In those cases various instruments were required to be read together as one contract. But in each instance the writings were either related to the same subject matter and intended to effectuate the same purpose, Nau v. Vulcan Rail & Constr. Co., 286 N.Y. 188, 197, 36 N.E.2d 106, 110 (1941), or were otherwise integrated by specific reference to the other agreements, Ripley v. International Railways of Central America, 8 N.Y.2d 430, 439, 209 N.Y.S.2d 289, 294, 171 N.E.2d 443, 446–447 (1960). Moreover, in *Ripley* the New York Court of Appeals stated:

> The circumstance that they are different documents does not necessarily mean that they do not form a single contract (Crabtree v. Elizabeth Arden Sales Corp., 305 N.Y. 48, 110 N.E.2d 551), *but it does indicate that they*

*are separate unless the history and subject matter shows them to be unified. Id.* at 438, 209 N.Y.S.2d at 294, 171 N.E.2d at 446 (emphasis added). Significantly, the three documents in the case at bar did not relate to the same subject matter even though they concerned the same parties. This conclusion is reached because each contract called for performance at different times, *i. e.*, each pertained to a different football season. *See* United States ex rel. Trane Co. v. Raymar Contracting Corp., 295 F.Supp. 234, 236 (S.D.N.Y.), aff'd. 406 F.2d 280 (2d Cir. 1968).[8]

Having determined that the parties entered into three separate contracts, it is necessary to evaluate plaintiff's second claim in light of this conclusion.

■ Paragraph 14 of the 1970 contract makes it unequivocally clear that the injury-benefits provision [9] is operative only during the relevant contract period. In this instance only during the 1970 football season. In pertinent part, paragraph 14 provides that if a

> Player is injured in the performance of his services *under this contract* . . . the Club will . . . continue, *during the term of this contract*, to pay Player his salary . . . if and so long as it is the opinion of the Club Physician that Player, because of such injury, is unable to perform the services required of him *by this contract* (emphasis added.)

Since the injury alleged by plaintiff occurred during the term of his 1969 contract, and since the 1970 contract is a

---

8. As to whether two or more separately executed instruments should be read together, Professor Corbin has stated that the "[t]ime and place of performance, and the character of that performance are . . . of importance." 3A A. Corbin, Contracts § 696 (1951). In addition, Professor Corbin has stated:

> It may be safe to say that when two parties have made two separate contracts it is more likely that promises

made in one are not conditional on performances required by the other. The two contracts and the duties they create are more likely to be said to be independent. *Id.*

9. The injury-benefits provision, which is contained in paragraph 14, *see* note 1, *supra*, allows a player to collect his entire salary under the contract if he is injured and unable to play during the term of the contract.

separate agreement, plaintiff can not prevail on his second cause of action. Only if plaintiff had sustained a disabling injury during the term of the 1970 contract would he be entitled to invoke the injury-benefits clause of that contract. Hence, defendant is entitled to summary judgment as a matter of law with respect to plaintiff's second claim.

The decision of the Court of Appeals for the Fifth Circuit in Hennigan v. Chargers Football Co., 431 F.2d 308 (5th Cir. 1970) lends support to the conclusion reached above. In *Hennigan* the plaintiff-player brought suit against the defendant-football team under the injury-benefits provision of the AFL Standard Players Contract for salary during the option-year [10] of his contract.[11] Plaintiff was injured during the second and third years of his three-year contract and was paid his salary for those years under the injury-benefits provision of the contract. Defendant exercised the option-clause of plaintiff's contract. This had the effect of obligating plaintiff to perform as a player for a period of one year after the termination of his original three-year contract.[12]

Plaintiff reported to preseason training for the option-year and was examined by defendant's team physician as required by the Standard Players Contract. The team physician found plaintiff physically unfit to play and recommended that he be rejected by the team. The defendant terminated its contract with plaintiff on the basis of the physician's recommendation.[13]

Subsequently, Hennigan brought suit against the Chargers for the salary he would have earned during the option-year of his contract. He predicated his claim on two separate grounds. First, that since he was injured during the term of the contract, which defendant extended by its exercise of the option clause, he was entitled to recovery under the injury-benefits provision of the original contract. His second argument, which is not relevant to the instant motion, concerned the applicability of the "no-cut" clause in the original contract to the option year.

After determining that the exercise of the option clause had the effect of creating a new contract with the plaintiff, the Fifth Circuit concluded:

[I]t follows that Hennigan was not entitled to compensation for the 1967 football season from the Chargers. He suffered no injury while in the

10. All professional football players who play for teams in the National Football League have a standard option clause in their contracts. This clause permits a team to renew the player's contract for a term of one year at not less than ninety percent of his previous salary. The option clause permits a player to leave a team by playing out his option year. The standard option clause reads as follows:
The Club may, by sending notice in writing to the Player, on or before the first day of May following the football season referred to in ¶ 1 hereof, renew this contract for a further term of one (1) year on the same terms as are provided by this contract, except that (1) the Club may fix the rate of compensation to be paid by the Club to the Player during said further term, which rate of compensation shall not be less than ninety-percent (90%) of the sum set forth in ¶ 3 hereof and shall be payable in installments during the football season in such further term as provided in ¶ 3; and (2) after such renewal this contract shall not include a further option to the Club to renew the contract. The phrase "rate of compensation" as above used shall not include bonus payments or payments of any nature whatsoever and shall be limited to the precise sum set forth in ¶ 3 hereof.

11. Hennigan signed his three-year contract with the Houston Oilers, Inc. in 1964. He completed his three years (1964, 1965 and 1966) with the Oilers and was traded to the defendant, Chargers Football Company, pursuant to paragraph 9 of the standard players contract. The Chargers then exercised the option-clause of Hennigan's original contract with the Oilers.

12. *See* note 10 *supra.*

13. Defendant was entitled to do this under paragraph 6 of the standard contract. *See* note 3 *supra.*

performance of any services required of him after the option was exercised. Consequently, he is not entitled to payment under paragraph 15 (the injury provision). 431 F.2d at 317–318.

The result reached above concerning Sample's second claim is thus on all fours with *Hennigan.*

Sample's other arguments regarding his second cause of action—"anticipatory breach" and "impossibility of performance"—are without merit and are rejected without detailed discussion.

As to the third cause of action, the court notes that at oral argument it granted defendant partial summary judgment to the extent of dismissing this claim without prejudice to its repleading.

■ In effect, the third cause of action alleges a *prima facie* tort based on the alleged wrongful dismissal of plaintiff by defendant. Plaintiff claims that defendant's alleged breach of contract caused him mental and bodily distress as well as injury to his good name and reputation and other business pursuits. Even if these claims are true the law in New York [14] is settled that such claims are not cognizable in actions for breach of employment contracts. *See, e. g.,* Cornell v. T. V. Development Corp., 17 N.Y.2d 69, 268 N.Y.S.2d 29, 215 N.E.2d 349 (1966); Amaducci v. Metropolitan Opera Association, 33 A.D.2d 542, 304 N.Y.S.2d 322 (1st Dept. 1969); Quinn v. Straus Broadcasting Group, Inc., 309 F.Supp. 1208 (S.D.N.Y.1970). In *Quinn* the plaintiff's claim was quite similar to Sample's third cause of action. Holding that one is not entitled to a separate cause of action for loss of opportunity and loss of reputation in breach of contract actions, the district court quoted from *Amaducci* as follows:

"It is well settled that the optimum measure of damages for wrongful discharge under a contract of employment is the salary fixed by the contract for the unexpired period of employment, and that damages to the good name, character and reputation of the plaintiff are not recoverable in an action for wrongful discharge." 309 F.Supp. at 1209, *quoting* Amaducci v. Metropolitan Opera Association, 33 A.D.2d 542, 543, 304 N.Y.S.2d 322, 323 (1st Dept. 1969).

If the injury that Sample alleged in his third cause of action was limited to that resulting from the termination of his contract alone, defendant would be entitled to partial summary judgment. It is clear that the *Amaducci* line of cases would mandate this result. Plaintiff argues, however, that his third cause of action is aimed not only at the termination of his contract but at the manner in which the termination was carried out. Plaintiff articulates this point as follows:

What plaintiff has alleged, in its third claim, in effect, is that not only did defendant wrongfully breach its contract with plaintiff, but the manner in which it did so, including its public statements such as press releases, was at least reckless and wanton, if not malicious, designed to injure the valuable asset of plaintiff, his reputation as a well known sports figure. The wrongs alleged go beyond the act of the breach alone; they go to the independent acts of defendant's purposeful attempts to injure plaintiff by the things it caused to be, or allowed to be, released to the press and the media concerning and implying plaintiff's either inability or unwillingness

---

14. Paragraph 18 of the contracts in question provide that they have been made under and shall be governed by the laws of New York. The parties do not dispute the validity of this provision. We therefore have applied New York law. *See* Klaxon v. Stentor Electric Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

to play apart from his injury. Certainly if brought as a separate action for prima facie or intentional tort, such an action would lie. The fact that it is joined with breach of contract claims cannot rob the third claim of its independent nature. Certainly, plaintiff is entitled to discovery which he has sought and not obtained, concerning any and all public statements or releases by defendant to the media in order to determine the extent of the independent wrong done to him.

In response, defendant asserts that plaintiff has failed to allege any act committed by defendant "which could give rise to tort liability other than the alleged breach of contract."

Under Fed.R.Civ.P. 56(f) a court may postpone decision on a motion for summary judgment if it should "appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition. . . ." Counsel for plaintiff in both his Affirmation and Memorandum in opposition to defendant's motion states that further discovery is necessary to particularize plaintiff's third claim. On the other hand, defendant asserts that "Discovery is not authorized in aid of a fishing expedition seeking a cause to complain." Both arguments are well taken.

■ Although there is authority for denying an application under Rule 56(f) if it is dilatory or lacking in merit, *see, e. g.,* Chung Wing Ping v. Kennedy, 111 U.S.App.D.C. 106, 294 F.2d 735, 737 cert. denied, 368 U.S. 938, 82 S.Ct. 380, 7 L.Ed.2d 337 (1961), courts generally treat Rule 56(f) motions liberally. Waldron v. British Petroleum Co., 231 F.Supp. 72, 94 (S.D.N.Y.1964).

It is unclear to what extent discovery has proceeded in this case. Both parties acknowledge that discovery was suspended pending the court's ruling on the instant motion. Nevertheless, the stipulation covering this suspension indicates that the suspension would only be effective for a short period of time. This period of time has passed.

■ From the facts as detailed, the court can not determine whether plaintiff has had a sufficient opportunity to adequately present his third claim. Accordingly, the court will order a continuance of this branch of defendant's motion until plaintiff has had ample time to particularize his third cause of action.[15]

The final item before the court is plaintiff's cross-motion, in the alternative pursuant to Fed.R.Civ.P. 12(f), to strike defendant's third affirmative defense as insufficient. Defendant's third affirmative defense alleges that

[p]laintiff's claims are barred by reason of his failure to comply with the exclusive procedures contained in the agreements sued upon defining the rights and procedural remedies of players claiming to be incapacitated by physical injury sustained in the performance of said agreements.

■ In general, motions to strike a defense as insufficient are not favorably regarded by the courts.[16] This is understandable because Rule 12(f) motions are often dilatory. 5 C. Wright & A.

---

15. By this disposition the court is not expressing its approval of plaintiff's action—i. e., agreeing to a suspension of discovery and then opposing summary judgment on the ground that further discovery is necessary. Nevertheless, because of the peculiar circumstances here (see text), the court is persuaded that the fairest course is to hold the third branch of defendant's motion in abeyance pending further discovery.

16. *See, e. g.,* Carter-Wallace, Inc. v. Riverton Labs., Inc., 47 F.R.D. 366, 367 (S.D. N.Y.1969); Giraud v. Teamsters, Chauffeurs, Warehousemen & Helpers, Local 901, 46 F.R.D. 5, 6 (D.P.R.1969); Old Dutch Farms, Inc. v. Milk Drivers & Dairy Employees Local Union No. 584, 281 F.Supp. 971, 975–976 (E.D.N.Y. 1968). *Cf.* 2A J. Moore, Federal Practice ¶ 12.21 [2] (2d ed. 1968) [hereinafter cited as 2A J. Moore].

Miller, Federal Practice & Procedure § 1381, at 799 (1969). Moreover, fundamental to our federal procedural scheme is the concept that pleadings should be liberally treated. Accordingly, even if a Rule 12(f) motion to strike is granted, it is generally granted with leave to amend. 2A J. Moore, Federal Practice ¶ 12.21 [3] (2d ed. 1968).

The disfavor with which courts view Rule 12(f) motions is clearly manifest in the line of cases denying motions to strike even though procedurally appropriate and well founded. These cases require a showing of prejudice to the moving party before a Rule 12(f) motion may be granted. *See, e. g.*, Augustus v. Board of Public Instruction, 306 F.2d 862, 868 (5th Cir. 1962); Warner & Swasey Co. v. Held, 256 F.Supp. 303, 313 (E.D.Wis.1966); Singer v. Dorr, 38 F.R.D. 167, 169 (E.D.La.1965).

■ Apart from this background, it is well settled that a motion to strike a defense as insufficient will not be granted if a substantial factual question or mixed question of fact and law must be resolved.[17]

■ In the case *sub judice* defendant's third affirmative defense raises questions of fact with respect to plaintiff's compliance with paragraph 14 of the contract.[18] Consequently, plaintiff's cross-motion to strike defendant's third affirmative defense must be denied. In any event, the court would be reluctant to rule on the legality of the disputed contract provision apart from the factual question of plaintiff's compliance therewith. When a substantial dispute over a question of law is raised on a motion to strike, it is more appropriate to postpone its determination until after discovery and a complete hearing on the merits. *See, e. g.*, Smith v. Piper Aircraft, 18 F.R.D. 169, 177 (M.D.Pa.1955).

Reviewing the dispositions, the court denies plaintiff's cross-motion for summary judgment on both its first and second causes of action. Plaintiff's motion in the alternative for an order under Rule 12.(f) striking defendant's third affirmative defense is likewise denied. Defendant's motion for summary judgment is denied with respect to plaintiff's first cause of action but granted with respect to plaintiff's second cause of action. As to the last branch of defendant's motion, a continuance is granted until such time as plaintiff can obtain sufficient discovery to further perfect his third claim.

So ordered.

17. *See, e. g.*, Augustus v. Board of Public Instruction, 306 F.2d 862, 868 (5th Cir. 1962); Carter-Wallace, Inc. v. Riverton Labs., Inc., 47 F.R.D. 366, 367–368 (S.D. N.Y.1969); Krisel v. Duran, 258 F.Supp. 845, 861–862 (S.D.N.Y.1966), aff'd per curiam 386 F.2d 179 (2d Cir.) cert. denied 390 U.S. 1042, 88 S.Ct. 1635, 20 L.Ed.2d 303 (1967); MacEwen v. Star-Kist Foods, Inc., 251 F.Supp. 33, 35 (E. D.N.Y.1966); Bacican v. American Mut. Liab. Ins. Co., 29 F.R.D. 133, 134–135 (E.D.Pa.1961); 2A J. Moore ¶ 12.21[3] at 2437 & n. 38. *Cf.* Taylor v. Orton, 216 F.2d 62, 64 (7th Cir. 1954).

18. For a more detailed discussion of this point see pp. 162–163 *supra*.