Peripheral Equipment, Incorporated, Appellant, *v.* Farrington Manufacturing Company, Respondent.

First Department, November 30, 1967.

*Joseph Calderon* of counsel (*Bergerman & Hourwich,* attorneys), for appellant.

*Joseph M. Rigolio* of counsel (*Sullivan, Donovan, Hanrahan, McGovern & Lane,* attorneys), for respondent.

McNally, J.   Plaintiff appeals from the order denying its motion for summary judgment.   The action is grounded on an agreement dated June 25, 1964. Thereby, plaintiff sold to defendant patent rights, models and sketches relating to a Dataprinter. Defendant paid plaintiff $3,000 on the execution of the agreement, and agreed to pay the additional sum of $7,000 when letters patent were issued.   Defendant agreed to manufacture Dataprinters for testing to enable it " to determine, in its sole and absolute judgment, whether or not said Dataprinter would be useful in the conduct of its business.   Such determination or option by Farrington [defendant] to accept or reject the Dataprinter shall be made or exercised on or before June 1, 1965."   In the event defendant exercised its option to reject, it was required to reassign to plaintiff the patent rights and related drawings, machinery and materials, and plaintiff was to be entitled to the sums theretofore paid or payable.   If defendant elected to accept the Dataprinter, it was required to pay a royalty of $1 for each machine sold or leased for the period of 10 years, or the term of the letters patent, whichever was longer, and the annual minimum royalties for the first 4 years were to be not less than $10,000.

Defendant paid plaintiff the initial $10,000.   The amended complaint alleges two causes of action.   The first alleges defendant's retention after June 1, 1965, of the contract property, defendant's failure to exercise its option to reject, and then alleges defendant did thereby " by its acts and conduct, accept the Dataprinter on and after June 1, 1965 " and is entitled to

the minimum royalties of $40,000. Alternatively, the amended complaint alleges defendant's failure prior to June 1, 1965, to manufacture the Dataprinter for testing, thereby breaching the agreement, to plaintiff's damage in the sum of $100,000.

Plaintiff's motion for summary judgment is limited to the first cause of action. On May 7, 1965, defendant requested plaintiff to extend the time for acceptance or rejection beyond June 1, 1965. On June 16, 1965, defendant was informed by plaintiff's attorneys that defendant's failure to give any written notice on or before June 1, 1965 "was a violation of the agreement" and legal proceedings would be instituted unless payment of $7,000 was made and the contract property returned by June 23, 1965. On July 8, 1965, defendant's attorneys submitted to plaintiff's attorneys a draft of an agreement to transfer a patent to plaintiff and inquired as to the place of return of the contract property. This action was instituted July 13, 1965.

In October, 1965 defendant's attorneys were informed by plaintiff's attorneys that plaintiff was no longer interested in the immediate return of the contract property. Despite plaintiff's failure to accede to an extension of the contract date for acceptance or rejection, defendant during July and August, 1965, conducted tests of the Dataprinter, resulting in negative reports.

It may well be that defendant's option to accept or reject the Dataprinter was required to be exercised on or before June 1, 1965. (See *Schaefer* v. *Thompson,* 237 N. Y. 55.) However, defendant's failure to so accept or reject the Dataprinter is not tantamount to its acceptance and undertaking to pay the royalties provided in the agreement. The contract requires defendant " to accept or reject  *  *  *   on or before June 1, 1965." The obligation to pay royalties is similarly conditioned on acceptance: " If Farrington [defendant] exercises its option to accept the Dataprinter, as above provided, then and in that event, in addition to the sum of Ten Thousand ($10,000.00) Dollars paid to Peripheral [plaintiff]  *  *  *  [defendant] shall pay to [plaintiff]  *  *  *  (a) A minimum royalty of Forty Thousand ($40,000.00) Dollars ". The contract does not provide that the obligation to pay royalties is to subsist unless defendant rejects the Dataprinter on or prior to June 1, 1965. On the contrary, it conditions the royalty obligation on defendant's acceptance of the Dataprinter on or before June 1, 1965.

The relevant contractual intent is that expressed in the contract, even though it may not accord with the subjective intent of the parties. (*Matter of Ahern* v. *South Buffalo Ry. Co.,* 303 N. Y. 545, 560–561; *Wilson Sullivan Co.* v. *International Paper*

*Makers Realty Co.*, 307 N. Y. 20, 25.) We may not, under the guise of construction, disregard the provisions of the contract as to acceptance on or prior to June 1, 1965, and construe it as if it provided solely for an option on the part of defendant to cancel on or prior to said date. " The rules of construction of contracts require us to adopt an interpretation which gives meaning to every provision of a contract or, in the negative, no provision of a contract should be left without force and effect." (*Muzak Corp.* v. *Hotel Taft Corp.*, 1 N Y 2d 42, 46.)

Plaintiff's amended complaint is grounded on defendant's acceptance of the Dataprinter. It alleges: " The defendant did, by its acts and conduct, accept the Dataprinter on and after June 1, 1965 and, pursuant to said contract, upon such acceptance there became due and payable from defendant to the plaintiff minimum royalties in the sum of $40,000 ". A judgment should conform with the allegations and proof. Plaintiff may not have summary judgment on a cause of action not alleged in its amended complaint. (*Cohen* v. *City Company of New York*, 283 N. Y. 112, 117–118; *Wolfson* v. *Mandell*, 13 A D 2d 760, 761; *Bright* v. *O'Neill*, 3 A D 2d 728; *Elsfelder* v. *Cournand*, 270 App. Div. 162, 165.)

Plaintiff alleges " defendant did, by its acts and conduct, accept the Dataprinter on and after June 1, 1965 ". The contract provides for acceptance by defendant " on or before June 1, 1965." Plaintiff insists defendant was required to accept on or before June 1, 1965, and nevertheless relies on defendant's acts and conduct subsequent thereto to establish its acceptance. This despite plaintiff's refusal to extend defendant's time to accept. There is an issue of fact as to whether, in the light of the conduct of the parties, and the inferences therefrom, defendant did accept the Dataprinter. (See *Barber-Greene Co.* v. *M. F. Dollard, Jr., Inc.*, 239 App. Div. 655, affd. 267 N. Y. 545.) The existence of a factual issue precludes summary judgment. (*Terranova* v. *Emil*, 20 N Y 2d 493, decided November 2, 1967.)

The order should be affirmed, with costs.

STEUER, J. P. (dissenting). Plaintiff had two patent applications pending in regard to a machine called the Dataprinter. On June 25, 1964, the parties entered into a contract whereby plaintiff assigned all its rights in the said machine. In return defendant agreed to pay $3,000 on execution of the contract; $7,000 on issuance of either of the two patents; and royalty payments in the minimum amount of $10,000 a year. As regards the last of these undertakings, defendant agreed to manufacture a limited quantity of these machines as improved by the pat-

ented features for the purpose of testing. If defendant, in its sole judgment, decided that if the machine would be useful in its business it would retain the rights to the machine. If not, the agreement was to be deemed cancelled except for the payments already provided to be made, and all patents, models and the like "forthwith" reassigned to plaintiff. It was further provided that: "Such determination or option by Farrington to accept or reject the Dataprinter shall be made or exercised on or before June 1, 1965."

Pursuant to the agreement the applications were assigned and working models, drawings and the like were delivered to defendant and defendant made the down payment. Subsequently a patent was issued on the application. Defendant did not pay the stipulated amount of $7,000. Nor did it by June 1, 1965, indicate any determination as to whether to retain or reject the patent. It did not assign the patent to plaintiff or deliver any of the working models, drawings or other material that it was obligated to return if the agreement was to be deemed cancelled. A year having expired, plaintiff brought suit for the installment of $7,000 and for the minimum royalty of $10,000 for the year. As to the first item, plaintiff has had judgment. Special Term denied summary judgment as to the second item, and this is the subject of this appeal.

It is defendant's contention, sustained by Special Term, that defendant's failure to act by June 1, 1965, constitutes neither acceptance nor rejection of the option to retain the rights in the machine under its contract. In appraising the correctness of this determination the intention of the parties as provided for in the agreement must be realized. Defendant bought and owned the invention. It had however an option to disaffirm the sale and relieve itself of the obligation of further payments. To exercise that option it had to do certain things by a certain date, namely, June 1, 1965. The question is therefore not whether a failure to do those acts indicates an acceptance (actually there was nothing to accept) but whether its option to cancel expired and the obligation previously undertaken became invulnerable. It is in this light that the significance of the date should be examined.

A date for performance in a contract may or may not have absolute controlling effect depending upon a variety of circumstances (*Ballen* v. *Potter*, 251 N. Y. 224). In this respect an option occupies a peculiar position. Generally an option is in the form of an irrevocable offer. The exercise of the option is the acceptance of that offer. The date is one of the terms of the offer. It is elementary in the law of contracts that an acceptance

must be in accord with the terms of the offer. An acceptance beyond the specified date is not in the terms of the offer and constitutes no acceptance. It is for this reason that Williston says: "Therefore 'whether the question arises either at law or in equity it is settled that "time is of the essence of an option."' " (6 Williston, Contracts [3d ed.], pp. 212–213.) And this has been very strictly adhered to (*Page* v. *Shainwald,* 169 N. Y. 246 — where the option date was January 1). The same is true when the option, as here, is for cancellation (*Lester* v. *Jewett,* 11 N. Y. 453; *Taylor* v. *Blair,* 59 Hun 347). "Where a contract contains a reserved option for its termination, cancellation, or rescission at a specified time period or date, the time period so specified is of the essence, and the option cannot be exercised after the time period or date thus specified has gone by." (10 N. Y. Jur., Contracts, § 423, pp. 440–441.)

Here the inept phrasing of the contract has confused the issue. There was no option to accept or reject. There had already been acceptance by transfer of the patent application, the necessary models and drawings and payment of the down price. What was left was an option to cancel by performance of certain acts by a certain date. The date having passed without performance of these acts, the option to cancel lapsed and defendant continued to be bound by the contract.

The order should be reversed, on the law, and summary judgment granted to plaintiff.

CAPOZZOLI, TILZER and McGIVERN, JJ., concur with McNALLY, J.; STEUER, J. P., dissents and votes to reverse and grant summary judgment to plaintiff, in opinion.

Order entered on June 5, 1967, affirmed, with $50 costs and disbursements to the respondent.