**DISTRICT NO. 1—PACIFIC COAST DISTRICT, MARINE ENGINEERS' BENEFICIAL ASSOCIATION, AFL–CIO, Plaintiff,**

**v.**

**TRINIDAD CORPORATION, Defendant.**

**No. 84 Civ. 0052(RWS).**

United States District Court, S.D. New York.

March 16, 1984.

Dickstein, Shapiro & Morin, New York City, for plaintiff; Sidney Dickstein, New York City, of counsel.

Seyfarth, Shaw, Fairweather & Geraldson, New York City, for defendant; Michael L. Hirschfeld, New York City, of counsel.

## OPINION

SWEET, District Judge.

Plaintiff District No. 1—Pacific Coast District, Marine Engineers' Beneficial Association, AFL–CIO ("MEBA") has moved to remand this action against Trinidad Corporation ("Trinidad") to the Supreme Court of the State of New York, County of New York. For the reasons set forth below, the

---

motion is granted, and the action is remanded.

**Facts**

MEBA is an unincorporated association that represents the licensed marine engineers including those employed by Trinidad. Trinidad is a Delaware corporation with its offices and place of business in Philadelphia, Pennsylvania, engaged in the ownership and operation of U.S. Flag vessels. Trinidad was acquired by the Apex Shipping Company, Inc., a Missouri corporation, in 1981. Apex Shipping, Inc. is owned in turn by the Apex Holding Company, also a Missouri corporation.

The collective bargaining agreement in effect between Trinidad and MEBA, the "Tanker Vessels Agreement" (the "Agreement"), was negotiated by the Tanker Services Committee, which was comprised of various tanker companies including Trinidad. The Agreement sets forth the rates of pay, hours of employment and other conditions of employment of Trinidad's licensed marine engineers and contains a grievance and arbitration provision that calls for arbitration of disputes between Trinidad and MEBA before a licensed personnel board. The Agreement states as follows:

> The award of the Arbitrator may be enforced in the courts of the State of New York. Any action to modify or vacate an arbitration award shall be instituted in the courts of the State of New York. It is expressly agreed that neither the Company nor the Union will seek the removal from the courts of the State of New York to the federal courts of any such proceeding to enforce, modify or vacate the award, and both the Company and the Union hereby expressly waive their right to seek such removal or institute proceedings to enforce, modify, or vacate the award in any forum other than the courts of the State of New York. Nothing in this paragraph shall preclude either the Company or the Union from initiating proceedings in any appropriate state or federal court with regard to any matter other than the enforcement, modification, or vacating of an arbitration award.

On October 11, 1983, MEBA demanded that Trinidad arbitrate a grievance arising out of an alleged violation of the Agreement. MEBA's grievance alleged that Trinidad had breached the Agreement by failing to apply its terms to the employees of Crest Tankers, Inc. ("Crest") and Clayton Tankers, Inc. as an affiliate of Trinidad ("Clayton"). MEBA alleged that Trinidad, Crest and Clayton were actually "alter egos" or "single employers" and, consequently, that MEBA was entitled to the work of the licensed marine engineers of all these employers.

Crest, which was incorporated in Missouri in September of 1982, is also engaged in the ownership and operation of U.S. Flag vessels. Clayton, which was incorporated in Missouri in January of 1983, is also engaged in the ownership of U.S. Flag vessels. Apex Holding Company owned Crest, Clayton as well as Trinidad each of which are separate corporations.

Crest and Trinidad formulate and administer separate labor relations policies. Trinidad and Crest assert that they have separate operations, personnel and accounting departments, do not interchange equipment, cargo or vessels or personnel, and have no interrelationship in financing, loans or services. Since October of 1982, Crest's employees have been represented by Crest Tanker Officers' Association ("CTOA"), a labor organization which operates an office in Palisades, New York. Clayton employs no shipboard employees.

**Prior Proceedings**

On November 1, 1983, Trinidad filed a complaint against MEBA in the United States District Court for the District of Columbia seeking: (1) an injunction prohibiting MEBA from pursuing the grievance, (2) a declaratory judgment that Trinidad, Crest, and Clayton are separate employers, and (3) an order compelling multi-partite arbitration. On November 4, 1983, Crest and Clayton filed a complaint against MEBA, in the United States District Court for the District of Columbia, seeking an

injunction against arbitration of MEBA's grievance, a declaratory judgment, and monetary damages for tortious interference with the collective bargaining agreement between Crest and CTOA. The District Court consolidated the Crest/Clayton and Trinidad actions.

The initial arbitration hearing was held on October 19, 1983. Trinidad requested a continuance, and the hearing was rescheduled for November 9, 1983. On November 4, 1983, the District Court issued a temporary restraining order enjoining the November 9, 1983 arbitration hearing. Four days later, on November 8, 1983, a panel of the District of Columbia Circuit vacated the temporary restraining order and issued their opinion on November 15, 1983.[1] 723 F.2d 70.

Despite Trinidad's request for a continuance, W.J. Usery, a permanent arbitrator and member of the licensed personnel board, allowed the arbitration hearing to proceed on November 9, 1983. On December 23, 1983, Arbitrator Usery issued an opinion and award sustaining MEBA's grievance. Specifically, the Arbitrator ruled that Crest and Trinidad are "alter egos" and a "single, common employer" and therefore that the licensed marine engineers of Crest are "accreted to Trinidad's unit of engineers." Accordingly, the Arbitrator ordered:

a. That Trinidad "immediately cause Apex Oil, Crest and Clayton to execute the Agreement."

b. That Trinidad "immediately apply the terms of the Agreement to all licensed marine engineers employed on all vessels owned or operated by Crest or Clayton."

c. That Trinidad pay back wages and fringe benefit contributions for all licensed marine engineers employed on all vessels owned or operated by Crest and/or Clayton "from the time said vessels were acquired until such time as the licensed marine engineers employed thereon are covered by the Agreement."

On December 23, 1983, MEBA filed in the Supreme Court of the State of New York, County of New York, a petition to confirm the arbitration award pursuant to N.Y.Civ.Prac.Law § 7510 and Section 301 of the Labor-Management Relations Act of 1947 (the "LMRA"), 29 U.S.C. § 185. On January 4, 1984, Trinidad removed the action to this court pursuant to 28 U.S.C. § 1441.

In addition to the proceedings just described, Crest and Clayton have two Section 301 actions pending in the Eastern District of Missouri, one seeking a determination that they are separate employers from Trinidad and one seeking a declaratory judgment that they are bound by neither the Agreement between Trinidad and MEBA nor the arbitration award. *Crest Tankers, Inc. v. National Maritime Union of America*, No. 83–1481(1) (E.D.Mo. 1983); *Crest Tankers, Inc. v. District No. 1—Pacific Coast District, Marine Engineers' Beneficial Association*, No. _____ (E.D.Mo.1983). Additionally, on January 3, 1984, CTOA demanded arbitration under the Crest–CTOA contract, asserting that its contract with Crest gives it exclusive jurisdiction over Crest's licensed engineers.

The instant motion was heard and finally submitted on February 2, 1984.

**The Issue**

MEBA contends that the forum-selection clause contained in the Agreement is valid and enforceable and that the action should be remanded to the state court. The motion thus raises the question of whether the parties can waive federal jurisdiction and agree to a state forum for resolution of their dispute. Trinidad contends that the contractual provision waiving the parties' right to removal is against public policy and therefore void. At odds with this contention is the policy that parties to a collective bargaining agreement be assured that their contract will be honored. *See W.R. Grace & Co. v. Local Union 759*, —— U.S. ——, 103 S.Ct. 2177, 2186, 76 L.Ed.2d 298

---

1. On January 11, 1984, Trinidad, Crest and Clayton voluntarily dismissed the actions pending

before the United States District Court for the District of Columbia.

(1983). In this contest of principles, the latter is found to be applicable.

**Conclusions**

Trinidad relies heavily on *Insurance Co. v. Morse,* 87 U.S. 445, 20 Wall 445, 22 L.Ed. 365 (1874), for the proposition that parties may not contract in advance to waive their right to remove an action from state to federal court. *Morse* held that "agreements in advance to oust the courts of the jurisdiction conferred by law are illegal and void." *Id.* at 451. However, the broad holding contained in *Morse* was narrowed by the Supreme Court's decision in *The Bremen v. Zapata Offshore Co.,* 407 U.S. 2, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972), which pointed out the constitutional basis of *Morse,* namely that a state could not by statute force a foreign corporation to surrender its federal statutory right to remove a state court action to federal court. *Id.* at 9 n. 10, 92 S.Ct. at 1912.

■ In *Bremen,* the court adopted the approach of the Restatement (Second) Conflict of Laws § 80 (1971) and held that forum-selection clauses in contracts are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances. *Id.* at 10–11, 92 S.Ct. at 1913. Comment a of the Restatement notes that a forum-selection provision will be disregarded if it is the result of overreaching or the unfair use of unequal bargaining power or if the forum chosen by the parties would be a seriously inconvenient one for trial of the particular action.

While it must be recognized that *Bremen* did not deal with the question of removal and the Congressional grant of that right, the general proposition remains valid in that context. See *City of New York v. Pullman, Inc.,* 477 F.Supp. 438 (S.D.N.Y. 1979). In *Pullman,* the Honorable Edward Weinfeld set forth the general proposition that "[a]greements entered into by knowledgeable parties in an arms-length transaction that contain a forum selection provision are enforceable absent a showing of fraud, overreaching, unreasonableness or unfairness." *Id.* at 441 n. 10. Judge Wein-

feld concluded that the contract provision in that case was ambiguous because it did not explicitly waive the right of removal, and he denied the plaintiff's motion to remand the action to the state court. However, he noted that "[i]f the purpose were to preclude a federal forum, explicit language to that effect would have foreclosed any issue on the matter. *Id.* at 442 (footnote omitted). In the instant case, there is no dispute that the parties explicitly waived their right to removal.

In *Roberts v. Lexington Insurance Co.,* 305 F.Supp. 47 (E.D.N.C.1969), the court took the view that the parties were unable to waive removal and federal jurisdiction by a service of suit clause in an insurance policy. The same position was taken in *Hasek v. Certain Lloyd's Underwriters,* 228 F.Supp. 754 (W.D.Mo.1963). These rulings did not deal with an explicit waiver as such but rather with the implications of the service of suit clause. To the extent that these holdings concluded without explication that a waiver of removal was unreasonable, I decline to apply these decisions to the Agreement at issue here.

Trinidad also seeks denial of the remand on the grounds that enforcement of the waiver in this situation would be unreasonable and against federal labor policy under section 301 of the LMRA, 29 U.S.C. § 185, which provides federal jurisdiction for suits for violations of contracts between an employer and a labor organization, and against federal policy generally. Trinidad argues that the state courts would be an unreasonable forum because federal law controls the issues presented.

■ However, it is well settled that state courts have concurrent jurisdiction over all actions "within the purview of § 301" and will apply federal substantive law in such proceedings. *Dowd Box Co. v. Courtney,* 368 U.S. 502, 507–08, 82 S.Ct. 519, 522–523, 7 L.Ed.2d 483 (1962); *Teamsters Local 174 v. Lucas Flour Co.,* 369 U.S. 95, 103–04, 82 S.Ct. 571, 576–77, 7 L.Ed.2d 593 (1962); *Long Island Lumber Co. v. Martin,* 15 N.Y.2d 380, 382–83, 259 N.Y.S.2d 142, 144

(1965). *See also, Franchise Tax Bd. v. Constc. Laborers Vacation Trust,* —— U.S. ——, 103 S.Ct. 2841, 2853–54, 77 L.Ed.2d 420 (1983).

■ While no federal decision has been cited which has directly addressed the issue of the validity of a waiver of the right to remove in a collective bargaining agreement is valid, one noted commentator has expressed the view that such a provision would be contrary to public policy and should not be enforced. Aaron, *The Strike and the Injunction—Problems of Remand and Removal,* in Proceedings of N.Y.U. 18th Ann.Conf. on Labor 93, 102–103 (1966) (hereinafter Aaron, *Remand and Removal*). According to Professor Aaron, the principal concern in section 301 cases is *not* whether the federal courts would be unduly burdened with litigation but whether state courts should be permitted to shape the development of the federal substantive law under section 301 of the LMRA. He concludes that they should not.

The competency of state courts to decide issues of "peculiarly federal interest," such as labor law, and the effect of *Textile Workers v. Lincoln Mills,* 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957), were considered by the Supreme Court in *Dowd:*

> It is argued that the rationale of *Lincoln Mills* would be frustrated if state courts were allowed to exercise concurrent jurisdiction over suits within the purview of § 301(a). The task of formulating federal common law in this area of labor management relations must be entrusted exclusively to the federal courts, it is said, because participation by the state courts would lead to a disharmony incompatible with the *Lincoln Mills* concept of an all-embracing body of federal law. Only the federal judiciary, the argument goes, possesses both the familiarity with federal labor legislation and the monolithic judicial system necessary for the proper achievement of the creative task envisioned by *Lincoln Mills.*
>
> \* \* \* \* \* \*
>
> Whatever the merits of this argument as a matter of policy, we find nothing to

indicate that Congress adopted such a policy in enacting § 301. The legislative history of the enactment nowhere suggests that, contrary to the clear import of the statutory language, Congress intended in enacting § 301(a) to deprive a party to a collective bargaining contract of the right to seek redress for its violation in an appropriate state tribunal.

> \* \* \* \* \* \*
>
> The legislative history makes clear that the basic purpose of § 301(a) was not to limit, but to expand, the availability of forums for enforcement of contracts made by labor organizations.

*Dowd, supra,* at 507–08, 82 S.Ct. at 522–523.

Trinidad relies most heavily upon the particular facts presented by the dispute between the parties, namely, the existence of the related party question in the underlying arbitration, the actions in the District of Columbia and most particularly, the actions in Missouri involving CTOA and the two affiliates of Trinidad, Clayton and Crest.

Urging the need for the orderly solution of difficult and complex problems, Trinidad asserts that one court should take control of all facets of the controversy as a matter of implementing a federal labor policy. While the danger of conflicting decisions and competing jurisdictions is indeed a theoretical possibility, in the absence of any authority for the proposition advanced by Trinidad, the parties will have to rely on more traditional analysis to reach a resolution. Presumably such doctrines as *res judicata, collateral estoppel* and *stare decisis* will afford some degree of relief.

Trinidad presented its argument to the Court of Appeals for the D.C. Circuit to no avail. The court responded:

> As for (Trinidad, Crest, Clayton and CTOA's) second argument, concerning the possibility of facing inconsistent arbitration awards, we find this contention to be squarely foreclosed by the Supreme Court decision in *Carey v. Westinghouse Electric Corp.,* 375 U.S. 261 [84 S.Ct.

401, 11 L.Ed.2d 320] (1964). In *Carey*, the International Union of Electrical Workers (IUE) was the certified bargaining representative of "all production and maintenance employees" at the plant where the controversy arose; "salaried, technical" employees were specifically excluded. * * * IUE filed a grievance asserting that certain employees represented by Westinghouse Independent Salaried Unions (Federation) were performing production and maintenance work. * * * Westinghouse refused to arbitrate, claiming the controversy concerned a representation matter within the exclusive jurisdiction of the National Labor Relations Board, * * *. The United States Supreme Court * * * held that the dispute should go to arbitration. The Court held that, whether the dispute was jurisdictional or representational in nature, the availability of recourse to the NLRB did not preclude contract arbitration. *Id.* at 268 [84 S.Ct. at 407]. A second issue in the case arose out of the fact that "only one of the two unions involved in the controversy [had] moved the state courts to compel arbitration." *Id.* at 265, [84 S.Ct. at 405]. Therefore, as the Court further stated, "unless the other union intervenes, an adjudication of the arbiter might not put an end to the dispute." *Id.* The Supreme Court did not regard this fact as an obstacle to proceeding with the arbitration because it found that resort to arbitration may have a pervasive, curative effect...." *Id.* at 272, [84 S.Ct. at 409].

Finally, in the unlikely event that the arbitrator, William J. Usery (who is a former Secretary of Labor and well-known expert in collective bargaining), should exceed his authority under the collective bargaining agreement, or otherwise render an unlawful or unenforceable award, there is nothing to prevent an aggrieved party from challenging the arbitrator's decision. *See e.g., United Steelworkers v. Enterprise Wheel and Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

*Trinidad Corporation v. District No. 1— Pacific Coast District*, 232 U.S.App.D.C. 367, 723 F.2d 70, 78–79 (D.C.Cir.1983).

Trinidad has noted that when one employer has an agreement with two unions, the Second Circuit has held that it is appropriate for the district court to require that concurrent arbitrations required by potentially conflicting collective bargaining agreements be resolved together, *Columbia Broadcasting System, Inc. v. American Recording and Broadcasting Ass'n.*, 414 F.2d 1326 (2d Cir.1969). That authority does not in my view extend the doctrine of necessary parties to require jurisdiction to be asserted over parties such as Crest and Clayton which allegedly are separate and independent and CTOA with which Crest has a collective bargaining agreement.

Amid this welter of conflicting considerations, paramount is the policy of enhancing free collective bargaining. The parties' waiver of the right of removal was knowing and explicit. The fact that the provisions of the Agreement may conflict with other procedures and even produce conflicting results fails to establish a basis to void its terms. *Cf. W.R. Grace & Co. v. Local 759, supra,* — U.S. —, 103 S.Ct. 2177, 2184–86, 76 L.Ed.2d 298 (1983) (although compliance with labor agreement and arbitration award could subject the employer to the risk of "both a contempt citation and Title VII liability," the situation did not justify overturning arbitration award and refusing to enforce agreement); *Associated General Contractors of America, Inc. v. IUOE Local 701*, 529 F.2d 1395 (9th Cir.), *cert. denied,* 429 U.S. 822, 97 S.Ct. 72, 50 L.Ed.2d 84 (1976) (despite conflict between collective bargaining agreement and NLRB work jurisdiction award, court did not void contract and enjoin arbitration).

Collective bargaining agreements such as the Agreement here are complex, have wide ramifications affecting affiliated entities and may require consideration in more than one forum. Such agreements do not always lend themselves to simplistic solution as indeed the District of Columbia

courts have already recognized with respect to this Agreement. To deny the motion to remand would relitigate the issues presented in the District of Columbia and would deny collaterally the effect of the decision there. To assert the primacy of this court and to consolidate the Missouri proceedings here, as Trinidad suggests, would be to set sail on an uncharted sea of Rule 42(a) consolidation and jurisdictional issues. The court declines the opportunity.

The motion to remand is granted.

IT IS SO ORDERED.