Neil E. ROGEN, Plaintiff,

v.

MEMRY CORPORATION, Defendant.

No. 92 Civ. 6926.

United States District Court,
S.D. New York.

May 23, 1995.

Rodney E. Gould, Rubin, Hay & Gould, Framingham, MA, for plaintiff.

James C. Riley, Whitman & Ransom, Greenwich, CT, for defendant.

## OPINION

BATTS, District Judge:

Plaintiff, Neil E. Rogen, brings this action for breach of employment contract. Defendant, Memry Corporation ("Memry"), has moved for summary judgment pursuant to Fed.R.Civ.P. 56. This motion requires the Court to determine the applicability of a forum selection clause contained in the employment agreement. For the reasons set forth below, summary judgment is granted.

## BACKGROUND

Memry, a Delaware corporation with its principal place of business in Brookfield, Connecticut, was founded by Rogen in November 1981.[1]

In November 1983, Rogen became the Chief Executive Officer of Memry. He entered into a five-year employment contract ("Agreement") with Memry at this time. The Agreement included a termination clause providing, in pertinent part:

> 4.3 Nothing contained herein shall preclude [Memry] from terminating this Agreement for cause, in which case [Memry] shall not have any further obligation to [Rogen] other than for the payment of accrued but unpaid regular compensation due to [Rogen] hereunder. The term "cause" as used herein shall mean actions and inactions by [Rogen] involving material fraud, material intentional dishonesty or material breach, after reasonable notice of opportunity to cure, of the terms of this Agreement.

In addition, the Agreement contained the following forum selection clause:

---

1. Prior to 1989, Memry was known as Memory Metals, Inc.

8.1 This Agreement shall be governed by and construed and enforced in accordance with the local laws of the State of New York applicable to agreements made and to be performed entirely in New York. The legal tribunals of the State of New York shall be the sole forum for resolving any claim, action or demand arising out of or pertaining to this Agreement.

In February 1984, Memry retained A.T. Brod & Co. ("Brod") to underwrite an initial public offering of its securities. On April 25, 1984, Memry filed a registration statement with the Securities and Exchange Commission ("SEC") in connection with the planned public offering. For unexplained reasons, near the end of the underwriting process, Brod ceased its involvement with the Memry public offering. Later in 1984, a Brod employee, Akiyoshi Yamada ("Yamada"), introduced Rogen to Pericles Constantinou ("Constantinou") as a person who could locate another underwriter. Constantinou introduced Memry to Securities First, Inc. ("Securities First"). Securities First agreed to underwrite the public offering. Memry, through Rogen, executed a letter of intent with Securities First in September 1984, and in November 1984, Memry and Securities First executed an underwriting agreement.

In addition, Constantinou arranged for Consulcor, Inc. ("Consulcor") to provide Memry with a $150,000 bridge loan to finance Memry's operations until the public offering closed. According to the agreement, Consulcor would loan Memry $50,000 immediately, $50,000 in December 1984 and the final $50,000 in February 1985.[2]

Constantinou did not limit his involvement to merely introducing Memry to Securities First and Consulcor. With the aid of Securities First broker Joseph Tavormina, Constantinou purchased Memry shares in his own name and in that of entities and nominees that he controlled. In addition, Tavormina sold much of the remaining shares to specific investors and stockbrokers, at Constantinou's direction.

Memry's registration statement became effective on November 9, 1984. Memry also distributed a prospectus to actual and prospective purchasers of its shares. On November 28, 1984, Rogen delivered stock certificates for 240,000 of his own shares to Constantinou. He transferred a stock power dated May 1, 1985, to Constantinou for those stock certificates. Rogen did not amend the Memry registration statement and prospectus in order to disclose the transfer to Constantinou of the 240,000 shares.

In August 1986, the SEC commenced an investigation into the aftermarket trading of Memry stock and the accuracy of certain Memry press releases issued from November 4, 1985 to August 19, 1986.[3] Thereafter, Memry retained the law firm of Obermaier, Morvillo & Abramowitz ("OM & A") to conduct an internal investigation regarding matters investigated by the SEC. In September 1986, Rogen informed the Memry board and OM & A about the transfer of the stock certificates for 240,000 shares to Constantinou. On October 2, 1986, Memry terminated the Agreement for "cause" and removed Rogen from his positions as Chief Executive Officer and Chairman of the Board. Memry cited Rogen's role in the allegedly misleading press releases, and his undisclosed transfer of stock certificates to Constantinou as the reasons for termination.

In October of 1986, Rogen demanded that Memry indemnify him for legal expenses arising out of the SEC investigation and various actions commenced against Memry and Rogen by certain shareholders. *See, e.g., Garfinkel v. Memory Metals, Inc.,* 695 F.Supp. 1397 (D.Conn.1988). After completing the internal investigation by OM & A, Memry decided not to indemnify Rogen. It cited, *inter alia,* Rogen's failure to cooperate fully with the OM & A investigation as a reason for their refusal to indemnify.

---

**2.** Memry actually received only the first $50,000 loan.

**3.** As a result of this investigation, four felony convictions were eventually secured against Con-

stantinou, Tavormina, Rodman and Irwin Hyman for their involvement in manipulating the after-market trading of Memry stock.

The SEC commenced a civil action against Rogen in March 1991, *Securities and Exchange Comm'n v. Rogen,* No. 91–Civ–1822 (S.D.N.Y.). The SEC alleged, *inter alia,* that Rogen had violated § 17(a) of the Securities Act of 1933 and § 10(b) of the Securities and Exchange Act of 1934 by transferring stock to Constantinou and committing insider trading. Rogen entered a consent decree with the SEC in March 1992. Pursuant to the decree, the final judgment enjoined Rogen from serving as an officer or director of any public company.

On September 25, 1992, Rogen commenced this present action, filing a Summons and Complaint ("Complaint") alleging two counts against Memry. Count I of the Complaint alleges that Memry breached the Agreement by terminating Rogen's employment without cause as that term is defined in the Agreement. Rogen seeks damages of $215,000 for the alleged contractual breach. Count II alleges that Memry failed to indemnify Rogen as required by Memry's bylaws. Rogen requests that this Court order Memry to indemnify him in the amount of $312,000.

On January 5, 1993, Memry filed an answer asserting various affirmative defenses. Memry's second affirmative defense states that the Southern District of New York "is not the proper venue for this action."

## DISCUSSION

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Citizens Bank of Clearwater v. Hunt,* 927 F.2d 707, 710 (2d Cir.1991). Memry cites three independent grounds in support of its motion for summary judgment. First, Memry asserts that the material facts for which there is no genuine issue to be tried show that both the breach of contract claim

and indemnification claim are meritless as a matter of law. Second, Memry contends that the indemnification claim is barred by the statute of limitations. Third, as to both the breach of contract and indemnification claims,[4] Memry contends that the forum selection clause of the Agreement requires that these claims be brought in the state courts of New York and therefore the Complaint should properly be dismissed. Because this Court finds that the forum selection clause renders venue in this Court improper and summary judgment is accordingly granted dismissing the Complaint on that ground, Memry's other two grounds for summary judgment will not be addressed.

*Forum Selection Clause*

■ It is well-settled that parties may bargain in advance to select the forum in which any future dispute will be litigated. *See Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585, 591–92, 111 S.Ct. 1522, 1526, 113 L.Ed.2d 622 (1991); *The Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). The Second Circuit has expressed a "strong policy" of enforcing forum selection agreements, *Weiss v. Columbia Pictures Television, Inc.,* 801 F.Supp. 1276, 1279 (S.D.N.Y.1992) (citing cases), and will do so "unless it can clearly be shown that enforcement 'would be unreasonable and unjust, or that the clause is otherwise invalid for such reasons as fraud or overreaching.'" *Bense v. Interstate Battery Sys. of Am., Inc.,* 683 F.2d 718, 721–22 (2d Cir.1982) (quoting *The Bremen,* 407 U.S. at 15, 92 S.Ct. at 1916); *accord Elite Parfums, Ltd. v. Rivera,* 872 F.Supp. 1269, 1271–72 (S.D.N.Y.1995).

Here, Rogen does not assert that enforcement of the forum selection clause would be unreasonable and unjust nor that the clause is the product of fraud or overreaching. Instead, Rogen contends that: 1) the clause is ambiguous and the ambiguity should be resolved in Rogen's favor since Memry was the drafter of the Agreement; and 2) Memry

---

4. Although arguably the indemnification claim does not arise solely out of the Agreement, Rogen does not dispute that the forum selection clause applies to the indemnification claim. In fact, Rogen explicitly asserts that the choice of law clause, which is in the same paragraph 8.1 as the forum selection clause, requires that the court employ New York law to the indemnification claim. (Pl.Opp'n to Def.Mot. for Summ.J., at 29.) Thus, this Court considers the applicability of the forum selection clause to both the breach of contract and indemnification claims.

waived its objections to venue since it failed to raise this issue in earlier pleadings and, specifically, Memry did not file a motion to dismiss for improper venue. Both of these contentions are meritless.

■ "For a statement to be ambiguous, it must be susceptible of two reasonable interpretations." *Banque Worms v. Banque Commerciale Privee*, 679 F.Supp. 1173, 1180 (S.D.N.Y.), *aff'd*, 849 F.2d 787 (2d Cir.1988); *accord Stern v. Satra Corp.*, 539 F.2d 1305, 1310 (2d Cir.1976). Rogen argues that the forum selection clause is susceptible to the interpretation that suits must be adjudicated within the geographical boundaries of the State of New York and does not necessarily designate New York State courts to the exclusion of federal courts sitting in New York. But such a reading is unnecessarily strained and ignores the clause's plain meaning. *See City of New York v. Pullman, Inc.*, 477 F.Supp. 438, 442 (S.D.N.Y.1979) (In considering if a forum selection clause is ambiguous, "[w]hat ... govern[s] is an objective consideration of the language") The clause designates "[t]he legal tribunals *of* the *State* of New York," not the courts "in" New York, as the agreed forum for adjudicating matters arising out of or pertaining to the Agreement. (emphasis added). The use of the word "of" and the phrase "State of" is sufficiently specific and unambiguous to require that actions regarding the Agreement be litigated in New York State court. This holding is consistent with case law. In *TUC Electronics., Inc. v. Eagle Telephonics, Inc.*, 698 F.Supp. 35, 39–40 (D.Conn.1988), the district court found that the phrase "a court of original jurisdiction of the State of New York" indicated with "reasonable clarity that the parties agreed to limit their dispute to the state courts," and, therefore, the federal court was not a proper venue. *Id.* (Noting that the forum selection clause used "of" as opposed to "in" the State of New York, and the limiting words "State of" in holding that New York state courts were the chosen forum). *See also Karl Koch Erecting Co. v. New York Convention Ctr. Dev. Corp.*, 838 F.2d 656, 659 (2d Cir.1988); *Intermountain Systems, Inc. v. Edsall Const. Co.*, 575 F.Supp. 1195, 1198 (D.Colo.1983) (Holding that the clause "venue shall be in Adams County, Colorado" could not be construed to include the federal court sitting in Adams County); *Spatz v. Nascone*, 364 F.Supp. 967, 974 (W.D.Pa.1973) (Construing "the Courts of the Commonwealth of Pennsylvania" to mean only the state courts of Pennsylvania). The Court is satisfied that the interpretation of the forum clause offered by Rogen is not a reasonable one and, therefore, the clause is not rendered ambiguous.

■ Rogen's argument that Memry waived its objections for failing to seek enforcement of the forum selection clause earlier is similarly without merit. Rogen asserts that Memry's failure to file a motion to dismiss and its subsequent filing of a counterclaim, participation in discovery and "long delay in raising the issue" constitutes a waiver of the improper venue defense. Pursuant to Fed.R.Civ.P. 12(b), a defense of improper venue can be raised both through a motion or in a responsive pleading. Although, as Rogen asserts, Memry did not raise the venue issue through a motion to dismiss, Memry did assert as its second affirmative defense in its answer that the Southern District of New York "is not the proper venue for this action." (Answer at 2). Federal Rule of Civil Procedure 12(h) requires only that the defense of improper venue be raised either by motion *or* the responsive pleadings to preserve properly the objection. *See, e.g., Concession Consultants, Inc. v. Mirisch*, 355 F.2d 369, 371 (2d Cir.1966). Since defendant's answer clearly raises objections as to venue, it cannot be said that it has waived that defense. In addition, the fact that Memry filed a counterclaim and participated in discovery does not render its objections to venue abandoned. *See Queen Noor, Inc. v. McGinn*, 578 F.Supp. 218, 220 (S.D.Tex. 1984); *Lomanco, Inc. v. Missouri Pacific R.R. Co.*, 566 F.Supp. 846, 849 (E.D.Ark. 1983); *Shaw v. United States*, 422 F.Supp. 339, 341 (S.D.N.Y.1976). In short, Memry did not waive its venue objection and the objection is properly raised in this motion for summary judgment. *Grissom v. Colotti*, 644 F.Supp. 903, 904 (D.P.R.1986) ("Summary judgment is an appropriate vehicle to assess the enforceability of a forum selection clause."); *see also Carnival Cruise*, 499 U.S.

at 588, 111 S.Ct. at 1524 (Forum selection clause enforced through motion for summary judgment); *Spatz,* 364 F.Supp. at 967 (Same).

Accordingly, summary judgment is granted for improper venue and the complaint dismissed.

IT IS SO ORDERED.