*340 OPINION OF THE COURT
Martin B. Stecher, J.
This is a CPLR article 78 proceeding brought by the petitioner to annul and vacate respondents’ determination discharging him from his position as a correction officer employed by the New York City Department of Correction (DOC). Petitioner seeks judgment directing his reinstatement with seniority and back pay or, alternatively, granting him an evidentiary hearing.
This special proceeding involves the distinction, if any, in Civil Service Law between the rights of one placed on "full probation” and one placed on "limited probation.” The respondents cite no case involving "limited probation”; the petitioner cites no case; and the court’s own research discloses none in point.
Petitioner was appointed to the position of correction officer with the DOC effective May 17, 1982 subject to satisfactory completion of a one-year probationary period. His probation ripened into a tenured position. Approximately 10 years after his initial probationary appointment, disciplinary proceedings were instituted against him for alleged violations of the DOC’s internal rules concerning lateness, absence without leave (AWOL) and sick leave. On March 17, 1992, the petitioner and the DOC entered into a "negotiated plea agreement”.
In the negotiated plea agreement, the petitioner agreed to accept as a penalty "Probation for a period of twelve (12) months limited to AWOL’s (Rule 3.05.060), latenesses (Rule 3.10.060) and sick leave violations (Directives 22612, 2258).”
A document entitled "Probation Agreement Form” contained among other things the following language: "I, Vernaldo Tankard, shield #5646, fully understand that by accepting the negotiated plea of Limited Probation for a period of twelve (12) Months limited to AWOL’s, latenesses, and sick leave violations [sic] ”
It also stated: "I have waived my rights as a tenured employee for this probationary period and am subject to termination as any other probationary employee.” The document is dated March 17, 1992 and is signed by the petitioner, his attorney and the DOC’s attorney. It was thereafter approved by the Commissioner.
There is an immediate, apparent contradiction between the two quoted provisions of the plea agreement. If Tankard was, as quoted above, "subject to termination as any other proba *341 tionary employee”, then his probation was not limited to "AWOL’s, latenesses, and sick leave violations”. The respondents have assumed that there is no distinction and all of the cases cited by the Corporation Counsel in support of dismissal assume that there is no limitation to this probation; that Tankard, upon entering into this agreement, was, for one year, subject to termination for any or no reason whatsoever and the cases cited by the Corporation Counsel deal only with "unlimited” probation (Matter of Venes v Community School Bd., 43 NY2d 520, 525; Matter of Talamo v Murphy, 38 NY2d 637; Matter of Sachs v Board of Educ., 71 AD2d 898, 899, affd 50 NY2d 830; Matter of Gagnon v Board of Educ., 119 AD2d 674, 675; Edwards v Codd, 59 AD2d 148; D’Aiuto v Department of Water Resources, 51 AD2d 700; Haberman v Codd, 48 AD2d 505).
There is no question that a negotiated plea agreement which provides for unlimited probation is valid and permits an agency to discharge the employee without cause and without a hearing during that probationary term (Matter of Abramovich v Board of Educ., 46 NY2d 450, cert denied 444 US 845; Montiel v Kiley, 147 AD2d 402). Here, however, the document which was entitled "Probation Agreement Form” expressly excluded "full” probation and provided for the "limited” probation described above.
A negotiated plea agreement is a contract and is to be interpreted by rules applying to any contract. Thus, it is the obligation of the court to give effect to every portion of the agreement and "no provision of a contract should be left without force and effect” (Muzak Corp. v Hotel Taft Corp., 1 NY2d 42, 47; Peripheral Equip. v Farrington Mfg. Co., 29 AD2d 11).
The distinction between probation "limited to AWOL’s * * * latenesses * * * and sick leave violations” and "full” probation is best understood in the context of the right of the employer to discharge the employee during the probationary period. It is reasonable to infer that this "limited probation” may only result in discharge without charges or a hearing during the term of probation if the petitioner violated the rules of the respondent concerning absence without leave, lateness and sick leave; while the rights to discharge him "as any other probationary employee” requires no reason whatever (see, Matter of Talamo v Murphy, supra, at 639). Thus, for instance, under the limited probation defined in the negotiated plea agreement, there would be no right to discharge the *342 employee because of unsatisfactory work performance without giving the employee notice of charges and a hearing; but "any other probationary employee” could be discharged for that or any other reason or for no reason at all.
It then becomes the duty of the court to reconcile these provisions, giving effect to both of them without distorting the apparent intent of the parties.
In my view, if it is undisputed that the petitioner was absent without leave or late for work or wrongfully absented himself from work claiming to be ill or otherwise violated relevant sick leave directives during the probationary term, the DOC was entitled to discharge the petitioner without notice of charges and without a hearing under the negotiated plea agreement.
Here, the petitioner is charged by the DOC with violating sick leave directive No. 2262 on August 5, 1992 in that he concededly was scheduled for an appointment at the Health Management Division (HMD) and that he failed to appear for his appointment. It is further alleged that petitioner failed to call the HMD unit to reschedule his appointment as required by sick leave directive No. 2262. That directive, which is made a part of the negotiated plea agreement by reference, provides in part as follows:
"HMD APPOINTMENTS AND MEDICAL DOCUMENTATION REQUIREMENTS
"A. A uniformed member who has been scheduled for an H.M.D. appointment must appear at H.M.D. on the date and time of his/her appointment. If the member is delayed or unable to keep his/her appointment, he/she must call the H.M.D. Scheduling Unit no later than one hour past the appointment time. The H.M.D. Scheduling Unit will set a new appointment and may request the member to produce documentation at his/her new appointment justifying the reason for the new appointment.”
In the petitioner’s papers he acknowledged that on August 5, 1992 he had scheduled what he called "an informal counsel-ling session” with the DOC’s psychologist; but he contends that he was grief stricken over the death of two friends and instead of attending the counselling session he worked a full tour of duty at the Brooklyn House of Detention. It is not disputed that he worked a full tour that day. Accordingly, he was not on "sick leave”.
*343 An examination of a summary of petitioner’s work record during probation reveals that between May 19, 1992 and July 24, 1992, petitioner missed 44 work days due to "depression”. It is thus obvious why he scheduled a session with the psychologist. Under sick leave directive No. 2262, the failure to keep the appointment, standing alone, was not a violation of the negotiated plea agreement unless coupled with a failure to "call the H.M.D. Scheduling Unit no later than one hour past the appointment time”.
The petitioner contends that his efforts to telephone the HMD sick desk were futile because "the phone lines were busy for hours”. As a consequence, it is alleged in petitioner’s reply, "he logged back into the control room at his facility, a common and accepted practice at the Department of Correction”. In his petition, petitioner says that on that day, August 5, 1992, he "arrived at the Brooklyn House of Detention and worked a full tour”. This is expressly admitted by respondents in their answer.
One of petitioner’s exhibits annexed to his reply is a decision by an Administrative Law Judge (ALJ) in an unemployment insurance claim made by petitioner following his dismissal. While the decision appears in some aspects confused, the ALJ reports that it was "the testimony of the employer’s witness, that the office[*] to which claimant had to report by telephone was often quite busy and there had been complaints by correction officers that they were unable to get through” (emphasis supplied).
It is anything but "undisputed” that petitioner, on August 5, 1992, violated sick leave directive No. 2262 by failing to make a telephone call. Under such circumstances dismissal without written charges or a hearing makes a nullity of the "limited probation” to which the DOC had previously agreed.
Mr. Tankard was entitled to written notice of charges, an opportunity to respond and if factual issues appeared, as they do in these papers, to an evidentiary hearing. That Mr. Tankard’s employment history may not have been exemplary and although discharge, after hearing, might be appropriate for his conduct (see, e.g., respondents’ exhibit 4 asserting that Tankard, during limited probation, failed to perform his duties "efficiently”, and failed to "properly supervise [an] *344 inmate” or failed to "submit a report/missing firearm”), the DOC could not avoid the strictures of subdivision (2) of Civil Service Law §75 by resorting to petitioner’s alleged and disputed failure to make a telephone call on a day he performed a full day’s work.
The petition is granted to the extent of directing the respondent to conduct a hearing on, and decide, within 45 days after service of a copy of this order with notice of entry, the single issue of whether or not the petitioner, by reason of his own fault or default, failed to telephone Health Management Division on August 5, 1992, within "one hour past the appointment time”.
If the determination after hearing is that petitioner was not guilty of such failure, he shall be reinstated to his former position with full pay, retroactive to the date of discharge, and with no interruption of continuous employment or seniority. If the determination is adverse to the petitioner, petitioner may bring further proceedings in this court.

 The opinion does not make clear that this was the HMD office; but in any event an issue is raised as to whether or not the failure to communicate by telephone was petitioner’s fault.